**No. 26-50280**

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

**ADRIAN CONEJO ARIAS;
L.C.R., a minor child by and through his
parent and guardian Adrian Conejo Arias,**

**Petitioners - Appellees,**

**v.**

**MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; TODD WALLACE BLANCHE, Acting U.S. Attorney General; DAREN K. MARGOLIN, in his official capacity as Acting Director of the Executive Office of Immigration Review; JOSE RODRIGUEZ, JR., in his official capacity as the Warden of the Dilley Immigration Processing Center in Dilley, Texas,**

**Respondents - Appellants.**

---

**On Appeal from the United States District Court
for the Western District of Texas
No. 5:26-cv-415**

---

# APPELLANTS' OPENING BRIEF

---

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed non-governmental persons and entities, as described in the fourth sentence of 5th Cir. R. 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.) Adrian Conejo Arias, Petitioner;

2.) L.C.R., Petitioner;

3.) Daniel Hatoum, Attorney for Petitioners;

4.) S. Denni Arnold, Attorney for Petitioners;

5.) Zachary Dolling, Attorney for Petitioners;

6.) Kate Gibson Kumar, Attorney for Petitioners;

7.) Texas Civil Rights Project;

8.) Jennifer Scarborough, Attorney for Petitioners; and

9.) Law Firm of Jennifer Scarborough.

10.) Jose Rodriguez, Jr., Respondent.

Respectfully submitted,

*s/ Tiberius Davis*
TIBERIUS DAVIS
Counsel to the Assistant Attorney General

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2), Respondents-Appellants submit that oral argument will assist the Court in resolving this appeal. Oral argument will aid the Court in evaluating the parties' arguments and facilitate the Court's resolution of this case. Thus, Respondents-Appellants request oral argument.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS

STATEMENT REGARDING ORAL ARGUMENT

INTRODUCTION ........ 1

STATEMENT OF JURISDICTION ........ 6

STATEMENT OF THE ISSUES ........ 6

STATEMENT OF THE CASE ........ 7

I. Statutory framework ........ 7

II. Factual background and procedural history ........ 11

SUMMARY OF THE ARGUMENT ........ 17

STANDARD OF REVIEW ........ 18

ARGUMENT ........ 19

I. The District Court's decision violates the party-presentation rule. ........ 19

II. Administrative Warrants do not violate the Fourth Amendment. ........ 21

III. Section 1225(b)(2) authorizes the detention of aliens, like Petitioners, who are present in the United States without having been admitted. ........ 28

IV. Alternatively, the case should be remanded to a different district court. ........ 30

CONCLUSION ........ 39

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Abel v. United States*,
362 U.S. 217 (1960) .......... 22

*Arizona v. United States*,
567 U.S. 387 (2012) .......... 26

*Ashwander v. TVA*,
297 U.S. 288 (1936) .......... 3

*Buenrostro-Mendez v. Bondi*,
166 F.4th 494 (5th Cir. 2026) .......... 4, 8, 18, 28, 29

*City of El Cenizo, Texas v. Texas*,
890 F.3d 164 (5th Cir. 2018) .......... 22, 23, 24

*Clark v. Sweeney*,
607 U.S. 7 (2025) .......... 21

*Conejo Arias v. Noem*,
818 F. Supp.3d 864 (W.D. Tex. 2026) .......... 5, passim

*Contreras v. United States*,
672 F.2d 307 (2d Cir. 1982) .......... 27

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) .......... 8

*Hernandez ex rel. Hernandez v. Foster*,
657 F.3d 463 (7th Cir. 2011) .......... 25

*Illinois v. Wardlow*,
528 U.S. 119 (2000) .......... 25

*Imran v. Harper*,
No. 25-30370, 2026 WL 93131 (5th Cir. Jan. 13, 2026) .......... 32

*INS v. Lopez-Mendoza*,
468 U.S. 1032 (1984) .......... 4, 27

*INS v. Phinpathya*,
464 U.S. 183 (1984) .......... 12

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) .......... 7, 8

*Johnson v. Sawyer*,
120 F.3d 1307 (5th Cir. 1997) .......... 31

*Kansas v. Glover*,
589 U.S. 376 (2020) .......... 24

*Kentucky v. King*,
563 U.S. 452 (2011) .......... 25

*Liteky v. United States*,
510 U.S. 540 (1994) .......... 30

*Noem v. Vasquez Perdomo*,
146 S. Ct. 1 (2025) .......... 11

*Pack v. Yusuff*,
218 F.3d 448 (5th Cir. 2000) .......... 18

*Perez v. City of San Antonio*,
163 F.4th 110 (5th Cir. 2025) .......... 33

*Salgado v. Scannel*,
561 F.2d 1211 (5th Cir. 1977) .......... 26

*SEC v. Barton*,
135 F.4th 206 (5th Cir. 2025) .......... 32

*Suraj v. Bondi*,
2026 WL 507682 (W.D. Wash. Feb. 24, 2026) .......... 28

*United States v. Brignoni-Ponce*,
422 U.S 873 (1975)........................................................................10, 26

*United States v. Burger*,
170 F.4th 395 (5th Cir. 2026)..............................................................30

*United States v. Khan*,
997 F.3d 242 (5th Cir. 2021)...................................................30, 31, 32, 36

*United States v. Lucas*,
499 F.3d 769 (8th Cir. 2007)................................................................22

*United States v. Malagerio*,
49 F.4th 911 (5th Cir. 2022)..................................................................22

*United States v. Quintana*,
623 F.3d 1237 (8th Cir. 2010)..............................................................27

*United States v. Samuels*,
808 F.2d 1298 (8th Cir. 1987)..............................................................21

*United States v. Santos-Portillo*,
997 F.3d 159 (4th Cir. 2021)................................................................27

*United States v. Sineneng-Smith*,
590 U.S. 371 (2020)....................................................................3, 17, 21

*United States v. Swenson*,
894 F.3d 677 (5th Cir. 2018)................................................................30

*United States v. Watson*,
423 U.S. 411 (1976)......................................................................25, 26

## STATUTES

### Immigration and Nationality Act of 1952, as amended:

Section 212,
8 U.S.C. § 1182 ........ 8

Section 212(a)(7)(A)(i)(I),
8 U.S.C. § 1182(a)(7)(A)(i)(I) ........ 11

Section 212(d)(5),
8 U.S.C. § 1182(d)(5) ........ 12

Section 212(d)(5)(A),
8 U.S.C. § 1182(d)(5)(A) ........ 9, 29

Section 235(a),
8 U.S.C. § 1225(a) ........ 29

Section 235(a)(1),
8 U.S.C. § 1225(a)(1) ........ 7

Section 235(a)(3),
8 U.S.C. § 1225(a)(3) ........ 7

Section 235(b),
8 U.S.C. § 1225(b) ........ 3

Section 235(b)(1)(A)(i),
8 U.S.C. § 1225(b)(1)(A)(i) ........ 8

Section 235(b)(2),
8 U.S.C. § 1225(b)(2) ........ 14, 15, 16, 19

Section 235(b)(2)(A),
8 U.S.C. § 1225(b)(2)(A) ........ 29

Section 235(b)(2)(B),
8 U.S.C. § 1225(b)(2)(B) .......... 29

Section 235(b)(4),
8 U.S.C. § 1225(b)(4) .......... 14, 19

Section 236(a),
8 U.S.C. § 1226(a) .......... 10, 11, 17

Section 240,
8 U.S.C. § 1229a .......... 11

Section 242(g),
8 U.S.C. § 1252(g) .......... 32

Section 287,
8 U.S.C. § 1357 .......... 10

Section 287(a)(1),
8 U.S.C. § 1357(a)(1) .......... 10, 11

Section 287(a)(2),
8 U.S.C. § 1357(a)(2) .......... 10, 11, 26

**OTHER STATUTES**

28 U.S.C. § 1291 .......... 6

28 U.S.C. § 1331 .......... 6

28 U.S.C. § 2106 .......... 30

28 U.S.C. § 2241 .......... 6, 18

28 U.S.C. § 2242 .......... 12, 23

28 U.S.C. § 2253(a) .......... 6

## RULES

Fed. R. App. P. 32(a)(5) .......... CoC

Fed. R. App. P. 32(a)(6) .......... CoC

Fed. R. App. P. 32(a)(7)(B)(i) .......... CoC

Fed. R. App. P. 32(f) .......... CoC

Fed. R. App. P. 32(g)(1) .......... CoC

Fed. R. Civ. P. 65(d)(1)(A) .......... 32

Federal Rule of Civil Procedure 65 .......... 32

## REGULATIONS

8 C.F.R. § 212.5(e)(1)(ii) .......... 9

8 C.F.R. § 212.5(e)(2)(i) .......... 9, 29

8 C.F.R. § 235.1 .......... 7

8 C.F.R. § 287.8(c)(2)(ii) .......... 26

# INTRODUCTION

The decision below bears none of the rudimentary elements of judicial decision-making. It does not cite a single case. Not one. It does not resolve an issue actually presented by the parties, instead delving headlong into an argument advanced by no one (save the court) to hold a federal statutory provision unconstitutional in a manner directly contrary to binding precedent. But even if it were otherwise, that unraised claim still could not justify the relief ordered. Nor could the arguments actually advanced (but not addressed) support such relief. The decision is thus untenable from top to bottom.

The process below also was marked by procedural oddities. Notably, the district court emailed Plaintiffs' counsel (cc'ing the government) a self-gratulatory mural "making the rounds here" depicting *himself* as a Solomonic figure to Plaintiffs' counsel and noting that a wealthy attorney had commissioned it to be painted. And his only critique on that adulatory "keepsake"? That it was missing the local Democratic Congressman, whose role in the case is unclear (and perhaps non-existent).

**Table 1: Mural Sent By District Judge To Plaintiffs' Counsel**



Emailed text accompanying mural: "This picture is making the rounds here. It is a keepsake for all involved, especially [L.C.R.] and his Dad regardless of what country they end up in. In the meantime. there is a well-to-do lawyer with whom I grew up in a mixed Mexican-American/Anglo neighborhood about four miles from our courthouse who is going to commission a traditional San Antonio mural in the area. I suggested Congressman Castro, who followed me at the same neighborhood high school, be included as well."

The errors begin with what issues were even presented. "In our adversarial system of adjudication, [federal courts] follow the principle of party presentation.... Courts … do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them, and

when cases arise, courts normally decide only questions presented by the parties.'" *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020) (cleaned up).

Here, Petitioners requested relief largely based on statutory arguments under 8 U.S.C. § 1225(b) and putative lack of probable cause for Petitioners' arrests. But the district court did not limit itself to those claims actually raised—or indeed reach those particular arguments at all. Instead, it decided to opine on an issue raised by no one: are all administrative warrants categorically unconstitutional under the Fourth Amendment? And without citing a single case, or analyzing any of the text or tradition of the Fourth Amendment, the district court boldly pronounced that they all were. Nor did the district court make any effort to explain why it was reaching out to decide a constitutional issue when alternative statutory grounds existed. *Cf. Ashwander v. TVA*, 297 U.S. 288, 347 (1936) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.") (Brandeis, J., concurring). That gratuitous and unreasoned constitutional holding is contrary to binding precedent, however.

But even if it was proper for the district court to reach that unraised constitutional argument (it wasn't), and even if the district court correctly decided that Fourth Amendment question (it didn't), the relief ordered would *still* be unwarranted. It is black-letter law that the legality of an arrest does *not* affect the validity of subsequent detention: "[T]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984). For that reason, the "mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." *Id.* at 1040. And here there is no dispute that Petitioners are not lawfully present in the United States, thereby permitting detention under the Constitution.

As to the actual Section 1225(b) statutory arguments that Petitioners *did* make, this Court has already rejected them. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026). And their arguments that probable cause was lacking both fail on the merits and also could not justify the habeas relief ordered below even if

meritorious since Petitioners' corpuses are not suppressable, thereby precluding habeas corpus relief.

Moreover, even if probable cause was lacking, the Department of Homeland Security (DHS) officers involved had ample reason to take Petitioner L.C.R. into custody here. That is because his co-Petitioner father, Mr. Arias, fled from DHS officers, leaving his *five*-year-old son to fend for himself in the brutal Minnesota cold, all so that he could make a futile attempt at flight. Following that self-serving act of child abandonment, his mother added one of her own: refusing to take L.C.R. herself. Lacking an alternative guardian for his child, Mr. Arias then asked to keep his son with him. Wanting to honor the family's wishes, DHS did just that. Indeed, what else could DHS have done? Would Petitioners or the district court have preferred that DHS left L.C.R., all of five years old, at the mercy of the elements where lethal exposure time was perhaps measurable in minutes?

The opinion below is thus indefensible on the law. And, rather than cite law, it was instead explicitly offered as a "[c]ivics lesson to the government." *Conejo Arias v. Noem*, 818 F. Supp.3d 864, 866 (W.D. Tex. 2026). But judges are supposed to apply *laws and legal precedents*, not

offer political diatribes adorned by a photograph as putative civics lessons. And they certainly should not be touting efforts to lionize their actions in commissioned triumphal murals in private communications with the parties. Indeed, the district court's actions here so profoundly departed from the realm of acceptable judicial behavior that this Court should vacate and order reassignment to a different district judge on remand if it does not reverse outright.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 2241. The district court granted Petitioners' petition for writ of habeas corpus on January 31, 2026. The Respondents timely filed a notice of appeal on April 1, 2026. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

## STATEMENT OF THE ISSUES

I. Whether the district court violated the party-presentation principle by deciding the habeas petition on an issue not raised by any party.

II. Whether the district court erred in holding that, under the Fourth Amendment, administrative warrants are categorically unconstitutional and thus release was a proper remedy.

III. Whether this Court should reassign the case if it determines remand is proper because the district court has evinced substantial bias and an inability to impartially adjudicate the case based on the law.

## STATEMENT OF THE CASE

### I. Statutory framework

Pursuant to Section 1225, an alien present in the United States who has not been admitted is "deemed ... an applicant for admission." 8 U.S.C. § 1225(a)(1). All applicants for admission are subject to inspection by immigration officers to determine if they are admissible to the United States. *See* 8 U.S.C. § 1225(a)(3).

The term "admission" is defined by the Immigration and Nationality Act ("INA") to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A); *see also* 8 C.F.R. § 235.1 (setting forth inspection procedures). Applicants for admission fall under two categories, i.e., those covered by Section 1225(b)(1) and those covered by Section 1225(b)(2). *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to aliens arriving in the United States who are determined to be inadmissible due to fraud, misrepresentation, or lack of

valid documentation. *See* 8 U.S.C. § 1225(b)(1)(A)(i); *DHS v. Thuraissigiam*, 591 U.S. 103, 109-13 (2020).

Section 1225(b)(2) is broader and applies to any applicant for admission who an immigration officer determines to be "not clearly and beyond a doubt entitled to be admitted" to the United States (with limited exceptions). *See id.* § 1225(b)(2)(A); *Jennings*, 583 U.S. at 287 (noting that Section 1225(b)(2) is "broader" and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)"); *accord Buenrostro-Mendez*, 166 F.4th at 499 (noting that all aliens not admitted or removed under section 1225(b)(1) are covered by section 1225(b)(2)). Under Section 1225(b)(2), if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, detention is mandatory: the statute provides that he or she "*shall* be detained for a proceeding under section 1229a." *Id.* § 1225(b)(2)(A) (emphasis added).

Notwithstanding that an alien applying for admission to the United States is deemed an arriving alien subject to the grounds of inadmissibility in the INA, *see* 8 U.S.C. § 1182, the Secretary of Homeland Security "may ... in his discretion parole" an arriving alien

seeking admission "temporarily under such conditions as [the Secretary] may prescribe [and] only on a case-by-case basis for urgent humanitarian reasons or significant public benefit...." 8 U.S.C. § 1182(d)(5)(A). An alien's grant of parole may be tied to a fixed period of time and, if so tied, "shall be automatically terminated without written notice" either upon the alien's departure from the United States *or*, if he fails to depart, "at the expiration of the time for which parole was authorized...." 8 C.F.R. § 212.5(e)(1)(ii). In any event, parole may be terminated by the Secretary at any time "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served...." 8 U.S.C. § 1182(d)(5)(A). In the implementing regulation, DHS construes termination to be permitted "upon accomplishment of the purpose for which parole was authorized or[,] when in the opinion of [DHS officials], neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States...." 8 C.F.R. § 212.5(e)(2)(i). At the termination of the authorized parole period, the alien is restored to the status he had at the time of parole. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i).

In order to arrest and detain such aliens, Congress explicitly approved the use by DHS of administrative warrants: "On a warrant issued by [DHS], an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Relatedly, Congress endowed DHS with "[p]owers without warrant." 8 U.S.C. § 1357. Specifically, and as most relevant here,

> [a]ny officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant--
>
> > (2) to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States . . . .

8 U.S.C. § 1357(a)(1)-(2); *see United States v. Brignoni-Ponce*, 422 U.S 873, 885-87 (1975) (discussing the various factors that may be considered in determining whether immigration officers had reasonable suspicion to

stop a car in a border area under section 1357(a)); *see also Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 2-4 (2025) (Kavanaugh, J.. concurring) (discussing various reasons giving rise to a reason to believe an individual is in this country unlawfully). Both an administrative warrant and warrantless arrest require probable cause that the alien is removable, not that a crime has been committed. *See* 8 U.S.C. §§ 1226(a), 1357(a)(1)-(2).

## II. Factual background and procedural history

Petitioner and his minor son, both natives and citizens of Ecuador, sought to enter the United States to seek asylum and related protection. ROA.26-50280.89 [*Adrian Conejo Arias*, No. 5:26-cv-00415 (W.D. Tex.), Dkt. No. 8 ("*Arias* Dkt.")]; *see* ROA.26-50280.37-44 [*Arias* Dkt. No. 1]. On December 14, 2024, using the United States Customs and Border Protection One app, Petitioners presented themselves at the border. ROA.26-50280.89 [*Arias* Dkt. No. 8]. DHS deemed them inadmissible pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I), as aliens who, at the time of their applications for admission, were not in possession of valid entry documents, and placed them in removal proceedings under 8 U.S.C. § 1229a. ROA.26-50280.37-44 [*Arias* Dkt. No. 1]. DHS released them on

humanitarian parole under 8 U.S.C. § 1182(d)(5), with an expiration date of April 18, 2025, as noted on the Form I-94 for each of them. ROA.26-50280.35-36 [*Arias* Dkt. No. 1].; *see* ROA.26-50280.89 [*Arias* Dkt. No. 8].

On January 20, 2026, ERO teams were conducting a targeted enforcement operation in Columbia Heights, Minnesota. Res'p Mot to Supplement, Padilla Declaration (Ex. 1) ¶5.[1] As part of a targeted enforcement operation, ERO officers were in possession of target lists and supporting documentation for removable aliens subject to a Form I-200, Warrant for Arrest of Alien, based upon probable cause of alienage and removability. *Id.* The officers knew the general area of the targets but engaged in license plate checks to locate the targeted aliens. *Id.* ¶6. As a

[1] Respondents dispute Petitioners' claims regarding how they came to the attention of immigration officials and ultimately into their custody. Petitioners' statement of facts regarding these issues, as advanced in their habeas petition is without evidentiary support. Indeed, Lead Petitioner did not attach a personal declaration to his habeas petition nor verify it as required. 28 U.S.C. § 2242. Thus, his attorney's allegations are just that—allegations, not evidence. *INS v. Phinpathya*, 464 U.S. 183, 188-89 n.6 (1984) (counsel's unsupported assertions are not evidence). The district court also made no factual findings regarding these issues. Because the district court did not provide time to develop the record, an explanation of the events that resulted in detention is contained in the declaration of Frank X. Padilla, attached to the concurrently filed motion to supplement the record.

result, the officers scanned Mr. Arias's vehicle in the area and determined that the owner was subject to a final order of removal. *Id.* ¶7. The officers thus surveilled the vehicle but lost track. *Id.* As a result, they went to Mr. Arias's address and observed him arriving. *Id.* ¶8.

When officers approached Mr. Arias, he exited the vehicle and fled. *Id.* ¶9. Officers detained him. *Id.* Officer Padilla noticed that his minor child was left inside the vehicle. *Id.* ¶10. So he conducted a safety check and made sure the child was okay given the extreme Minnesota cold. *Id.*

The officers then confirmed that Mr. Arias and his son were citizens of Ecuador and subject to removal. *Id.* ¶11. Officers were told the child's mother was in the house, so they tried to contact her to take the child. *Id.* ¶¶12-13. She refused, however, to open the door and take her son. *Id.* ¶14. At that time, numerous agitators were yelling at officers and blaring horns. *Id.* One of the individuals who had been following officers and interfering with surveillance offered to take the child. *Id.* Officers did not know who this person was so they asked Mr. Arias if he consented but he refused. *Id.* After reasonable attempts to place the child with his mother failed, and because Mr. Arias requested the child remain with him, officers kept L.C.R. with Mr. Arias. *Id.* ¶16. The next day, DHS

transferred them to Dilley, Texas, and then assigned them to the San Antonio Resident Office.

On January 24, 2026, Lead Petitioner and his son, through counsel, filed a petition for a writ of habeas corpus in the Western District of Texas, arguing that their detention was unlawful. ROA.26-50280.7-32 [*Arias* Dkt. No. 1]. In their habeas petition, Petitioners averred that their detention was unlawful because: (1) their re-detention after release on parole violated their right to due process; (2) their warrantless arrest violated the Fourth Amendment due to a lack of probable cause; (3) they were not arriving aliens and thus could not be detained under 8 U.S.C. § 1225(b)(2); (4) their detention was contrary to a United States Immigration and Customs Enforcement ("ICE") policy directive and therefore violated the *Acardi* doctrine; and (5) their continued detention under 8 U.S.C. § 1225(b)(2) was inappropriate. ROA.26-50280.21-31 [*Arias* Dkt. No. 1]. Petitioners presented no evidence to substantiate their various factual allegations.

Petitioners also filed a motion for a preliminary injunction ("PI") and a temporary restraining order ("TRO"). ROA.26-50280.62-78 [*Arias* Dkt. No. 3]. In that motion, Petitioners repeated the factual allegations

advanced in their habeas petition, claimed that they should immediately be released from custody because they were likely to prevail on that petition, and asserted that they would face irreparable harm if emergency relief was not granted. ROA.26-50280.69-74 [*Arias* Dkt. No. 3]. Petitioners again presented no evidence to substantiate their various factual allegations.

On January 26, 2026, the district court ordered that the United States Attorney's Office ("USAO"), Western District of Texas, be served with the petitions and further ordered that the government file a response to the petitions within five days after the date of service. ROA.26-50280.79-81 [*Arias* Dkt. No. 4]. On January 29, 2026, the district court accelerated that deadline by issuing an order requiring a response to be filed on or before 3:00 p.m. on Friday, January 30, 2026. ROA.26-50280.86-87 [*Arias* Dkt. No. 7]. Federal Respondents filed a response in accordance with that deadline. ROA.26-50280.88-98 [*Arias* Dkt. No. 8]. In that response, the Federal Respondents responded only to Petitioners' claims and did not raise any new issues. *Id.*

The next day (a Saturday), the district court granted the habeas petition. ROA.26-50280.101-03 [*Arias* Dkt. No. 9]. In its one-page opinion

and order, the district court stated that it was providing a "[c]ivics lesson to the government: Administrative warrants issued by the executive branch to itself do not pass probable cause muster. That is called the fox guarding the henhouse. The Constitution requires an independent judicial officer." ROA.26-50280.102 [*Arias* Dkt. No. 9] (no citation omitted). The district court made no factual findings and did not cite any precedential opinions. *Id.* The court then proceeded to grant "[t]he Great Writ and release from detention" for Lead Petitioner and his son. ROA.26-50280.102 [*Arias* Dkt. No. 9]. The court then entered final judgment the same day. Petitioners were released from custody in compliance with the district court's order. ROA.26-50280.105 [*Arias* Dkt. No. 12].

The Executive Office for Immigration Review reports that Petitioners have final orders of removal. On February 19, 2026, the immigration judge pretermitted the asylum application and ordered Lead Petitioner and his family removed to Ecuador. On June 15, 2026, the Board dismissed Petitioners' appeal, vacated the immigration judge's order of removal to Ecuador, and ordered Petitioners removed to Honduras.

## SUMMARY OF THE ARGUMENT

The district court's order is utterly bereft of factual or legal support and should be reversed. As an initial matter, the district court violated the well-established party-presentation rule by basing its decision on an issue neither party raised. Neither party even mentioned whether an arrest under an administrative warrant passes Constitutional muster generally. That issue was instead injected into this case wholesale by the district court, thereby effectuating a "radical transformation of this case [went] well beyond the pale." *Sineneng-Smith*, 590 U.S. at 372. In doing so, the district court effectively held that 8 U.S.C. § 1226(a)'s explicit authorization of administrative warrants was facially unconstitutional.

But even if that issue were validly presented, it is well-established that such warrants pass constitutional muster. The district court ignored binding precedent on this exact issue. Alternatively, Petitioners presented no evidence that they were detained pursuant to an administrative warrant. Instead, they argued that any arrest lacked probable cause without evidence to meet their burden. If the government was allowed to develop the record, however, it would have been clear that there was probable cause. Nothing in the record before the district court

suggests that the arresting ICE agents were acting outside of their authority to conduct arrest Petitioners either pursuant to a warrant or a warrantless arrest.

Finally, Petitioners argument that detention was improper under Section 1225(b) is contrary to binding precedent. *Buenrostro-Mendez*, 166 F.4th at 502-08. The district court's decision should therefore be reversed.

In the event that this Court remands for further proceedings, given the bias exhibited by the district court judge, this case should be reassigned to a different judge. The irregular manner in which the district court handled this habeas petition, wrote an opinion bereft of law, and then lionized himself in an email to counsel all evinces partiality that warrants reassignment.

**STANDARD OF REVIEW**

This Court reviews *de novo* a district court's grant or denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2241. *Buenrostro-Mendez*, 166 F.4th at 502; *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000).

# ARGUMENT

## I. The District Court's decision violates the party-presentation rule.

In the decision on appeal, the district court released Petitioners through habeas corpus, ruling that administrative warrants facially violate the Fourth Amendment because "[t]he Constitution requires an independent judicial officer." *Conejo Arias*, 818 F. Supp. 3d at 866. In doing so, the district court said it was giving the government a "[c]ivics lesson." *Id.* Yet in offering its lesson the district court failed to cite any law or precedent (other than bare acknowledgement of the Fourth Amendment, whose text and tradition go unmentioned). As a result, the district court's law-free, one-page order must be reversed for multiple reasons.

To start, Petitioners claims in their habeas petition included that (1) their re-detention after release on parole violated their right to due process; (2) their warrantless arrest violated the Fourth Amendment due to a lack of probable cause; (3) they were not arriving aliens and thus could not be detained under 8 U.S.C. § 1225(b)(2); (4) their detention was contrary to a United States Immigration and Customs Enforcement ("ICE") policy directive and therefore violated the Acardi doctrine; and

(5) their continued detention under 8 U.S.C. § 1225(b)(2) was inappropriate. ROA.26-50280.21-31 [*Arias* Dkt. No. 1]. In their Motions for a TRO, PI, and to show cause, they largely incorporated their unverified petition. ROA.26-50280.62-75 [*Arias* Dkt. No. 3].

The district court, however, did not grant habeas on any of those grounds. Instead, the district court breezily opined that all administrative warrants violate the Fourth Amendment. *Conejo Arias*, 818 F. Supp. 3d at 866. Yet Petitioners never brought that claim, moved for relief under it, nor did the parties brief the issue of whether administrative warrants can ever satisfy the Fourth Amendment. Importantly, the district court did not develop the record, make any factual findings, or even rule on Petitioners' factual probable cause claim. Consequently, the district court's sua sponte decision on the legal validity of administrative warrants generally violated the clearly established party-presentation rule of litigation. As the Supreme Court not so long ago reminded the Ninth Circuit:

> [i]n our adversarial system of adjudication, we follow the principle of party presentation.... "[C]ourts are essentially passive instruments of government." They "do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them],

> and when [cases arise, courts] normally decide only questions presented by the parties."

*Sineneng-Smith*, 590 U.S. at 375-76 (alterations in original) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g en banc)). And, just this past November, the Supreme Court summarily reversed a grant of a habeas petition by the Fourth Circuit for violating the party-presentation principle, stating: "The Fourth Circuit transgressed the party-presentation principle by granting relief on a claim that Sweeney never asserted and that the State never had the chance to address." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025).

Thus, because the district court clearly violated the party-presentation rule by sua sponte reaching an issue that neither party raised, the decision is in error and should be reversed for this reason alone.

## II. Administrative Warrants do not violate the Fourth Amendment.

**1.** On the merits of the decision (if presented), the district court erred as a legal matter in holding that "[a]dministrative warrants issued by the executive branch to itself do not pass probable cause muster." *Conejo Arias*, 818 F. Supp.3d at 866. The district court's ruling appears

to rest on the premise that all administrative warrants violate the Fourth Amendment because "[t]he Constitution requires an independent judicial officer." *Id.* That extreme position (that not even Petitioners advanced) has been soundly rejected by binding case law. *See United States v. Malagerio*, 49 F.4th 911, 915 (5th Cir. 2022); *City of El Cenizo, Texas v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018) ("It is undisputed that federal immigration officers may seize aliens based on an administrative warrant attesting to probable cause of removability." (emphasis omitted)); *accord Abel v. United States*, 362 U.S. 217, 234 (1960) ("In the presence of this impressive historical evidence of acceptance of the validity of statutes providing for administrative deportation arrest from almost the beginning of the Nation, petitioner's disavowal of the issue below calls for no further consideration."); *United States v. Lucas*, 499 F.3d 769, 776 (8th Cir. 2007) (rejecting similar argument for administrative warrant to enter a house).

"In the immigration context," this Court rejected a nearly identical argument, holding that "administrative warrants can be issued without probable cause that a crime has been committed and without the involvement of 'a neutral and detached magistrate.'" *Malagerio*, 49 F.4th

at 915. Instead, "immigration officers may seize aliens based on an administrative warrant attesting to probable cause of removability." *City of El Cenizo*, 890 F.3d at 187 (rejecting similar argument for local police relying on administrative warrants). That binding case law resolves this case and requires reversal.

**2.** Even if this Court decided to review the basis for probable cause, however, reversal would still be required. The district court entered final judgment a week after the case was filed with no factual development. Petitioners offered *zero* evidence, simply citing to their unverified complaint. *See* ROA.26-50280.25-26 [*Arias* Dkt. No. 1]; 28 U.S.C. § 2242 (petition must be "signed and verified by the person for whose relief it is intended or by someone acting in his behalf."). So it was impossible for Petitioners to meet their burden that any arrest lacked probable cause. *City of El Cenizo*, 890 F.3d at 187. Indeed, there is nothing in the empty factual record to suggest in this case that ICE agents did not have probable cause of Lead Petitioner's (and his son's) alienage. Indeed, Petitioners ultimately admitted alienage to the ICE agents and later conceded alienage in removal proceedings. Res'p Mot. to Supplement, Ex. 1 ¶11. Thus, the district court's conclusion that

immigration officials could not use an administrative warrant to arrest Lead Petitioner and his son for removal is incorrect as a matter of law.

While unnecessary to reverse, this Court could also consider the Declaration of Officer Frank Padilla, which also supports probable cause. For an administrative warrant, officers only need probable cause that the alien is removable. *See City of El Cenizo*, 890 F.3d at 187; *see also* Res'p Mot. to Supplement, Ex. 1. As part of a targeted enforcement operation, ERO officers were in possession of target lists and supporting documentation for removable aliens subject to a Form I-200 based upon probable cause of alienage and removability. Ex 1. ¶5. The officers knew the general area of the targets but engaged in license plate checks to locate the targeted aliens. *Id.* ¶6. As a result, the officers scanned Mr. Arias's vehicles in the area and determined that the owner was subject to a final order of removal. *Id.* ¶7. Evidence regarding the owner of a vehicle can support at least reasonable suspicion for a stop. *Kansas v. Glover*, 589 U.S. 376, 381 (2020). Thus, at this point they knew Mr. Arias was removable. The officers then surveilled the vehicle but lost track. *Id.* As a result, they went to Mr. Arias's address and observed him arriving. *Id.* ¶8.

When officers approached Mr. Arias, he exited the vehicle and fled. *Id.* ¶9. Flight from officers also supports reasonable suspicion for a stop. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Officers thus briefly detained Mr. Arias. Ex. 1 ¶9. The officers then confirmed that Mr. Arias and his son were citizens of Ecuador and in the country illegally and subject to removal. *Id.* ¶11. That provided whatever remaining probable cause was necessary to arrest Mr. Arias.

Moreover, Mr. Arias's five-year-old son was left in his car in the cold. *Id.* ¶10. Officers were told the child's mother was in the house, so they tried to contact her and take the child. *Id.* ¶12-13. She refused, however, to open the door and take the child. *Id.* ¶14. After reasonable attempts to place the child with her mother failed, and because Mr. Arias requested the child remain with him, officers kept the child with Mr. Arias. *Id.* ¶16. That too permitted DHS to care for the child as either, protective custody, exigent circumstances because a child being left in the cold, or consent of the guardian. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 474–75 (7th Cir. 2011) (probable cause or exigent circumstances allow protective custody of a child); *Kentucky v. King*, 563 U.S. 452, 462 (2011) (exigent circumstances exception); *cf. United States*

*v. Watson*, 423 U.S. 411, 424 (1976) (consent can resolve Fourth Amendment issues). DHS did not and continues to have no desire to hold L.C.R., but it was necessary to care for the child under the circumstances.

**3.** Further, and to the extent that the district court's holding could be read to encompass that an illegal alien cannot be arrested without a judicial warrant, any such decision likewise would be legally incorrect. *Conejo Arias*, 818 F. Supp.3d at 866. The INA explicitly allows for the warrantless arrest of an illegal alien, where the immigration officer "has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest...." 8 U.S.C. § 1357(a)(2); *see Arizona v. United States*, 567 U.S. 387, 407-408 (2012); *see also* 8 C.F.R. § 287.8(c)(2)(ii). Here, ICE agents acted appropriately and well-within their authority under 8 U.S.C. § 1357(a)(2). *See United States v. Brignoni-Ponce*, 422 U.S. at 885-87 (discussing the various factors that may be considered in determining whether immigration officers had reasonable suspicion to stop a car in a border area under section 1357(a)). As long as there is reason to believe that the individual is removable and would likely escape if a warrant was obtained, a warrantless arrest

complies with the Fourth Amendment and INA. *See Salgado v. Scannel*, 561 F.2d 1211, 1212 (5th Cir. 1977) (rejecting argument a magistrate was required); *United States v. Quintana*, 623 F.3d 1237, 1241 (8th Cir. 2010); *Contreras v. United States*, 672 F.2d 307, 308–09 (2d Cir. 1982).

As explained, officers clearly had reason to believe that Petitioners were removable before arresting them. Petitioners have since conceded they are here unlawfully. Petitioners have also never proven that officers lacked reason to believe that they would escape absent a warrant. Given his immediate flight, ICE agents clearly had reason to believe they might escape.

**4.** In any event, release is an improper remedy for the putative violations of the Fourth Amendment or statutory law here. After all, "the 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred." *Lopez-Mendoza*, 468 U.S. at 1039. Indeed, the "mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." *Id.* at 1040; *see also United States v. Santos-Portillo*, 997 F.3d 159, 166–67 (4th Cir. 2021) (same for statutory violations). At

bottom, federal courts cannot suppress the body of a habeas petitioner. But by granting habeas corpus relief, the district court did just that.

The only pertinent question in habeas is thus whether the continued detention of the alien is based on probable cause. Here, Petitioners do not contest that they are in the country illegally and have final orders of removal. Ongoing detention was thus lawful. As a result, release was an improper remedy even for an unlawful arrest. *See Suraj v. Bondi*, 2026 WL 507682, at *3 (W.D. Wash. Feb. 24, 2026) (illegal warrantless arrest does not provide for release if current detention is legal).

## III. Section 1225(b)(2) authorizes the detention of aliens, like Petitioners, who are present in the United States without having been admitted.

The primary grounds for release that Petitioners pursued also do not provide an alternative route to affirmance. Petitioners primarily argued that their detention was unlawful under Section 1225(b)(2). But since then this Court has held that 1225(b)(2) authorizes detention of all aliens deemed as applicants for admission. *Buenrostro-Mendez*, 166 F.4th at 502-08.

Petitioners fall squarely within the statutory definition. Petitioners were "present in the United States," had "not been admitted," and do not fall within any of the exceptions to Section 1225(b)(2)(A). 8 U.S.C. § 1225(a), (b)(2)(B). Moreover, they cannot—and did not—establish that they are "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). While DHS released Petitioners on humanitarian parole on December 14, 2024, that parole expired on April 18, 2025. At the expiration of that period of parole, Petitioners' status automatically reverted to that of arriving aliens. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i).

Petitioners have never contested this. Thus, at the time of expiration, Petitioners' detention was again (and remains) mandatory under 8 U.S.C. § 1225(b)(2)(A). Therefore, Petitioners, as this Court held in *Buenrostro-Mendez*, "shall be detained" under § 1225(b)(2)(A) during the pendency of their removal proceedings.

In its brief one-page order, the district court did not grapple with this statutory mandate. Instead, he simply released Petitioners based on unraised Fourth Amendment claims. This Court's binding precedent, however, makes clear that DHS has the right to detain Petitioners,

rejecting the core claim that Petitioners actually raised. ROA.26-50280.21-31 [*Arias* Dkt. No. 1].

### IV. Alternatively, the case should be remanded to a different district court.

As discussed, the district court did not address the issues that the parties raised—in clear violation of the party-presentation rule. Additionally, as shown, the district court's ultimate conclusion—that administrative warrants are always unconstitutional—is contrary to law. The district court also failed to develop the record for any other possible claim. The government believes judgment should be entered for the government on remand. If, however, this Court believes the record should be developed on the original claims further on remand, it should remand to a different judge given the bias exhibited here.

A federal appellate court has the authority to require that a case be reassigned on remand. *See* 28 U.S.C. § 2106; *Liteky v. United States*, 510 U.S. 540, 552-53 (1994). Reassignment is admittedly an "extraordinary" and "rarely invoked" remedy but has been used by this Court on occasion. *United States v. Khan*, 997 F.3d 242, 248 (5th Cir. 2021) (quotation marks omitted); *see United States v. Burger*, 170 F.4th 395, 410 (5th Cir. 2026); *United States v. Swenson*, 894 F.3d 677, 681-86

(5th Cir. 2018) (reassigning where the district judge attributed mistakes during the trial to the prosecutor's gender); *Johnson v. Sawyer*, 120 F.3d 1307, 1333-35 (5th Cir. 1997) (reassigning a case, that a district judge had handled for 10 years, based on the appearance of impartiality due to repeated comments on the record disparaging government counsel and undermining the Fifth Circuit's prior rulings).

In evaluating the propriety of reassignment, this Court applies two separate, but related, tests. *Khan*, 997 F.3d at 249. Under the first test, the Court must weigh:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* (quotation marks omitted). The second test requires assessing whether the "facts might reasonably cause an objective observer to question [the judge's] impartiality." *Id.* (internal quotation marks omitted). Though this Court has not decided which test to use, it has noted the internal redundancy between the tests such that the results of

each test have been the same. *Id.* n.4; *see also SEC v. Barton*, 135 F.4th 206, 228-29 (5th Cir. 2025).

Here, under either test, the district court's handling of this case evinces bias by the judge and that he would have substantial difficulty looking at this case with impartiality. This is supported by the fact that the district court requested a dramatically expedited response to the habeas petition. ROA.26-50280.79-81 [*Arias* Dkt. No. 4]. The district court then moved from the filing of the petition to final judgment in under a week, only giving the USAO a few days to respond (and eventually ordering a response be filed within a day ROA.26-50280.86-87 [*Arias* Dkt. No. 7]. The district court also stayed Petitioners' removal without a response from the USAO despite lacking jurisdiction under 8 U.S.C. § 1252(g) to do so. *Imran v. Harper*, No. 25-30370, 2026 WL 93131, at *1 (5th Cir. Jan. 13, 2026) (unpublished); *see* ROA.26-50280.81 [*Arias* Dkt. No. 4].

Insofar as the district court granted Petitioners' emergency motions and entered a TRO or PI, it did not comply with Federal Rule of Civil Procedure 65, which requires, at a minimum, that the court explain its reasoning. *See* Fed. R. Civ. P. 65(d)(1)(A). Notably, in the order staying

Petitioners' removal, the district court judge did not endeavor to address any of the relevant factors for an injunction. *See, e.g.*, *Perez v. City of San Antonio*, 163 F.4th 110, 118 (5th Cir. 2025) ("To obtain the extraordinary remedy of a preliminary injunction, the movant must show he is likely to prevail on the merits and also demonstrate a substantial threat of irreparable injury if the injunction is not granted; the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and the injunction will not disserve the public interest." (quotation marks omitted)). The highly irregular proceedings that all favored Petitioners reflected a broader bias against the government.

Further, Petitioners' briefing included no evidence supporting several factual allegations regarding the nature of Petitioners' arrest and detention. Indeed, Petitioners provided no evidence, simply incorporating their unverified petition. ROA.26-50280.62-75 [*Arias* Dkt. No. 3]; *see* ROA.26-50280.7-32 [*Arias* Dkt. No. 1]. Yet, despite this, the district court, one day after the USAO filed its opposition, granted the habeas petition without developing the evidentiary record and entered final judgment. ROA.26-50280.101-03 [*Arias* Dkt. No. 9]. The court issued a single-page published opinion cited no precedents whatsoever but

somehow nonetheless excoriating the government for flouting the Constitution by allowing for administrative warrants, notwithstanding (1) the lack of any admissible evidence that Petitioners were detained pursuant to administrative warrants, (2) that no constitutional or statutory challenge to such warrants was raised by Petitioners, and (3) that such arguments, even if made, are contrary controlling precedent. *Id.*

In lieu of any of the traditional bedrocks of judicial decision-making—*i.e.*, citation to legal precedents, analyzing arguments raised by the parties, and deciding issues based on admissible evidence, rather than unverified allegations—the district court indulged raw demagoguery: including a media picture for effect, garnering substantial media attention:

FRED BIERY
UNITED STATES DISTRICT JUDGE



Credit: Bystander
Matthew 19:14
John 11:35

The court also explicitly stated its intent that its opinion serve as a "[c]ivics lesson to the government." *Conejo Arias v. Noem*, 818 F. Supp.3d at 866. That declared intent to send a message to the government, untethered from citation to any legal precedents, is further revealing of bias. As might be expected, the use of the photograph and "civics Lesson" language produced substantial media interest: The New York Times, for

example, championed the district court's decision as the "Weaponized Wit" against putative Executive overreach.[2]

Given the judge's irregular procedures, ruling, and behavior, it is clear that "an objective observer [might] question [the judge's] impartiality." *Khan*, 997 F.3d at 249. Reassignment is thus at least advisable to preserve the appearance of justice. And the fact the judge granted relief on a claim that never was raised—and did so as a sweeping constitutional holding—makes it apparent the judge will have substantial difficulty putting aside his previous preconceived theory. Moreover, because the judge granted relief on a non-existent claim without briefing or a record, reassigning the case for another court to actually address the claims and develop the record would not be wasteful or duplicitous. If anything, it would be far more efficient. That alone warrants reassignment.

But the district court did not stop there. Instead, after final judgment was entered, the district court sent an email with the subject line "A Throat Lump and Eye Moisture Picture" to all counsel of record.

[2] https://www.nytimes.com/interactive/2026/02/03/books/judge-ruling-liam-conejo-ramos-analysis.html.

Res'p Mot to Supplement, Judge Biery email (Ex. 2).[3] The email came with a picture, likely generated by artificial intelligence, showing Mr. Arias and his son hugging with the judge smiling below them in a Solomonic posture.



The email went on to inform counsel that "[t]his picture is making the rounds here. It is a keepsake for all involved, especially [L.C.R.] and

[3] The email written by Judge Biery is attached to the concurrently filed motion to supplement. This email was sent after final judgment, so there was no opportunity to supplement the record below. And doing so would be futile given the district court's behavior.

his Dad regardless of what country they end up in. In the meantime. there is a well-to-do lawyer with whom I grew up in a mixed Mexican-American/Anglo neighborhood about four miles from our courthouse who is going to commission a traditional San Antonio mural in the area. I suggested Congressman Castro, who followed me at the same neighborhood high school, be included as well."

This injudicious behavior reflects that the judge would have difficulty divorcing himself from the underlying circumstances and conforming himself to the arguments raised by the parties. The judge is openly lionizing himself and letting counsel know a wealthy attorney had commissioned the painting of this mural and suggests that a local Congressman also be included. This does not bear on the merits of the case, but the judge's own investment in its public perception. It is thus difficult to believe the judge could reach a different conclusion or that a reasonable observer would not suspect bias. The bias is, after all, palpable. If this injudicious behavior does not warrant reassignment, it is difficult to imagine what would.

## CONCLUSION

The Court should reverse the district court's order granting the writ of habeas corpus.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney General

s/ Tiberius Davis
TIBERIUS DAVIS
Counsel to the Assistant Attorney General
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202)-860-8970

Dated: August 11, 2026

Attorneys for Respondents-Appellants

## **CERTIFICATE OF SERVICE**

I hereby certify that, on August 11, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I also certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Tiberius Davis*
TIBERIUS DAVIS
Counsel to the Assistant Attorney General
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202)-860-8970

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), counsel for Respondent hereby certifies that the attached answering brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because the brief contains 7,221 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b)(1). The undersigned further certifies that the answering brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally-spaced, 14-point, Century Schoolbook typeface using Word for Microsoft 365.

*s/ Tiberius Davis*

TIBERIUS DAVIS
Counsel to the Assistant Attorney General
Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202)-860-8970