**No. 26-50280**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**ADRIAN CONEJO ARIAS,
L.C.R.,
Petitioners-Appellees,**

**v.**

**MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD LYONS, in his official capacity as Acting Director of United States Immigration and Customs Enforcement; TODD WALLACE BLANCHE, Acting U.S. Attorney General; DAREN K. MARGOLIN, in his official capacity as Acting Director, Executive Office for Immigration Review; JOSE RODRIGUEZ, JR., in his official capacity as Warden, Dilley Immigration Processing Center,
Respondents-Appellants.**

---

**On Appeal from the United States District Court
for the Western District of Texas
No. 5:26-cv-415**

---

**DECLARATION OF FRANK X. PADILLA**

---

I, Frank X. Padilla, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a Deportation Officer with the San Francisco Field Office of Enforcement and Removal Operations (ERO), U.S. Immigration and Customs Enforcement (ICE) within the U.S. Department of Homeland Security (DHS). I have been employed with ERO since September 2025. Prior to that I was employed by the U.S. Bureau of Prisons for five years, and prior to that I was a police officer with a local law enforcement agency. In this position, my duties include locating and arresting aliens who are removable from the United States, including fugitive aliens.

2. This declaration is based on my personal knowledge, experience as a law enforcement officer, information provided to me in my official capacity, and information obtained from various records, systems, databases, and information portals maintained and relied upon by DHS in the regular course of business.

3. In the exercise of my official duties, I am aware of the above-captioned civil action and understand that ICE is a named defendant.

4. I submit this declaration to explain the circumstances surrounding the January 20, 2026, civil immigration arrest of Adrian Conejo Arias (Arias).

5. On Tuesday, January 20, 2026, ERO teams were conducting a targeted enforcement operation in Columbia Heights, Minnesota. As part of a targeted enforcement operation, ERO officers were in possession of target lists and supporting documentation for removable aliens subject to a Form I-200, Warrant for

Arrest of Alien, based upon probable cause of alienage and removability or Form I-205, Warrant of Removal, based upon a final order of removal. The operation involved vehicle and identity checks consistent with ERO's law enforcement authorities. Arias was not specifically targeted but was encountered when officers were searching for targeted aliens.

6. Other officers and I had previously conducted surveillance and had identified the general location of the residence of a targeted criminal alien. Although we knew the general area, we did not know the exact address for the targeted alien. For that reason, we checked license plates in the area to see if we could identify the residence of the targeted alien.

7. We determined the license plate of Arias's vehicle was registered to an alien with a final order of removal. As a result, we began surveilling the vehicle. Due to heavy traffic conditions and the presence of individuals following officers and interfering with surveillance efforts, officers temporarily lost visual contact with the target vehicle.

8. Shortly thereafter, other officers and I positioned ourselves near Arias's address in anticipation of his return. We observed the vehicle arriving at that location and entering the driveway. We positioned ourselves behind the target vehicle and attempted to make contact with the driver.

9. When other officers and I approached the vehicle, Arias exited the

driver's seat and fled on foot. The other officers pursued and later apprehended Arias.

10. After Arias fled, I stayed with the vehicle because I observed that a minor child had been left inside the vehicle. Due to the vehicle's tinted windows, I conducted a safety check of the vehicle to determine whether any additional occupants were inside. No other occupants were found, and I remained with the child to ensure the child's safety and well-being.

11. Officers returned Arias to the location where the child was present. Records checks conducted by officers confirmed that Arias was born in Ecuador, is a citizen of Ecuador by birth, and had no lawful immigration status in the United States.

12. Officers asked Arias about the mother of the child. Arias told officers that the child's mother was inside the residence at the location. When officers requested that Arias contact her, Arias said he did not have his cell phone.

13. Shortly thereafter, officers observed a woman looking out from a window of the residence. Arias confirmed to officers that the woman was the child's mother.

14. An officer then attempted to contact the woman to arrange for the child to be safely released into her care. During this time, multiple individuals were present outside the residence, yelling and sounding vehicle horns. Officers

approached the residence and explained to the woman through the door that officers only sought to safely return her child to her. Despite multiple attempts, the woman declined to open the door or otherwise take custody of the child.

15. One of the individuals who had been following officers and interfering with surveillance offered to take the child. Officers asked Arias if he wanted the child to go with that person and Arias declined.

16. Officers notified the ERO Assistant Field Office Director of the circumstances. After reasonable efforts to place the child with the mother were unsuccessful, and because Arias requested that the child remain with him, officers placed the child in the care of his father, who had been lawfully apprehended. The child is also an alien with no lawful immigration status in the United States.

17. While transporting Arias and the child to the detention facility, officers stopped to obtain food for the child and took reasonable steps to comfort him, including playing music that was identified to them as the child's favorite.

18. Upon arrival at the facility, officers remained with the child to ensure his well-being until he was placed in a holding cell with Arias separate from any other detainees.

19. Throughout this operation, officers consistently prioritized the safety and welfare of the minor child, made reasonable efforts to place the child with his mother, and acted in accordance with agency policy and applicable law.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 31st Day of July 2026.

FRANK X PADILLA

Digitally signed by FRANK X PADILLA
Date: 2026.07.31 09:17:10 -07'00'

Frank X. Padilla
Deportation Officer
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security