# No. 26-50280

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

Adrian Conejo Arias; L.C.R., a minor child by and through his parent and guardian Adrian Conejo Arias,

Petitioners - Appellees,

v.

Markwayne Mullin, Secretary, U.S. Department of Homeland Security; Todd Lyons, in his official capacity as Acting Director, United States Immigration and Customs Enforcement; Todd Wallace Blanche, U.S. Attorney General; Daren K. Margolin, in his official capacity as Acting Director of the Executive Office of Immigration Review; Jose Rodriguez, Jr., in his official capacity as the Warden of the Dilley Immigration Processing Center in Dilley, Texas,

Respondents - Appellants.

---

## On Appeal from

United States District Court for the Western District of Texas

5:26-CV-415

---

## APPELLEES' RESPONSE BRIEF

---

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Respondents-Appellants**

1. Jose Rodriguez, Jr., Warden of the Dilley Immigration Processing Center in Dilley, Texas

2. Tiberius Davis, Counsel for Respondents-Appellants, of the U.S. Department of Justice

3. Drew Ensign, Counsel for Respondents-Appellants, of the U.S. Department of Justice

4. Markwayne Mullin, Secretary, U.S. Department of Homeland Security

5. Todd Lyons, Acting Director, U.S. Immigration and Customs Enforcement

6. Todd Wallace Blanche, U.S. Attorney General

7. Daren K. Margolin, Acting Director, Executive Office of Immigration Review

**Petitioners-Appellees**

8. Adrian Conejo Arias, Petitioner-Appellee

9. L.C.R., Petitioner-Appellee

10. Texas Civil Rights Project ("TCRP")

11. Daniel Hatoum, Lead Counsel for Petitioners-Appellees, of TCRP

12. S. Denni Arnold, Counsel for Petitioners-Appellees, of TCRP

13. Kate Gibson Kumar, Counsel for Petitioners-Appellees, of TCRP

14. Zachary Dolling, Counsel for Petitioners-Appellees, of TCRP

15. O'Melveny & Myers, L.L.P. ("O'Melveny")

16. Jonathan D. Hacker, Counsel for Petitioners-Appellees, of O'Melveny

17. Melissa C. Cassel-Walker, Counsel for Petitioners-Appellees, of O'Melveny

18. Kelsey Miller, Counsel for Petitioners-Appellees, of O'Melveny

19. Jenya Godina, Counsel for Petitioners-Appellees, of O'Melveny

20. The Law Firm of Jennifer Scarborough

21. Jennifer Scarborough, Counsel for Petitioners-Appellees in the district court proceedings, of the Law Firm of Jennifer Scarborough

/S/ *S. Denni Arnold*
S. Denni Arnold
*Counsel of Record for Petitioners-Appellees*

Dated: September 29, 2026

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a)(2), Petitioners-Appellees submit that the facts and legal arguments are adequately presented in the parties' briefs and in the evidentiary record. Therefore, oral argument is unnecessary to aid this Court's resolution of this matter. Petitioners-Appellees do not request oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .................................................... i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS.......................................................................... iv

TABLE OF AUTHORITIES .................................................................... vii

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT ...............................................................3

STATEMENT OF THE ISSUES...................................................................3

STATEMENT OF THE CASE......................................................................4

I. Factual Background..............................................................................4

II. Procedural History ...............................................................................7

SUMMARY OF THE ARGUMENT .............................................................11

STANDARD OF REVIEW ........................................................................15

ARGUMENT .........................................................................................15

I. This Court should summarily affirm the District Court's grant on due process grounds because that decision was correct and the Government fails to challenge it on appeal. .........................................................................15

A. The Conejo Family sought, and the District Court granted, relief on constitutional due process grounds. ......................................................16

B. Because the Government challenges only the District Court's purported alternative holding on Fourth Amendment grounds, it has waived or forfeited any argument that the due process holding was wrong. ...........20

C. The Government cannot demonstrate the extraordinary circumstances required to overcome its failure to challenge the District Court's due process holding. ....................22

II. The District Court's decision rested on a proper evidentiary record and the Government has forfeited any argument to the contrary....................26

A. The Government forfeited its argument that the petition was unverified. ....................27

B. The Conejo Family's attorney verified the habeas petition on the family's behalf....................30

C. Even if the petition had not been verified, the District Court was authorized to consider it....................32

D. Documentary evidence was submitted with the habeas petition. ............33

III. Alternatively, this Court can affirm because the record establishes that the Conejo Family's rights under the Fourth Amendment and related grounds were violated by their wrongful arrest and ongoing seizure. ......................34

A. The Government's arrest and detention of Mr. Conejo and L.C.R without a warrant and without probable cause also supports habeas relief. .........35

B. The Government failure to conduct a *Gerstein*-style probable cause determination to continue the Conejo Family's detention likewise warrants habeas relief....................39

C. Ordering release as a habeas remedy for these Fourth Amendment violations would not be equivalent to suppressing the Conejo Family's identities or challenging subsequent immigration proceedings..............43

IV. The Government's statutory analysis is unpersuasive because the District Court decided this case on *constitutional*, not statutory, grounds..............44

V. If the Court does not affirm on the basis of the District Court's due process holding or on the basis that the Conejo Family's detention violated the Fourth Amendment or related grounds, it should remand. .........................48

VI. If this Court does remand, the extraordinary remedy of reassignment is unwarranted. ....................................................................................48

CONCLUSION....................................................................................................54

CERTIFICATE OF SERVICE ..............................................................................56

CERTIFICATE OF COMPLIANCE......................................................................56

# TABLE OF AUTHORITIES

## CASES

*A.B.D. v. Wamsley*,
No. 25-cv-02014, 2026 WL 178306 (D. Or. Jan. 22, 2026) ........................ 39, 44

*Akilov v. LaRose*,
No. 25-CV-3831 JLS (BJW), 2026 WL 74289 (S.D. Cal. Jan. 9, 2026)............19

*Arizona v. United States*,
567 U.S. 387 (2012) ........................................................................................36

*Baker v. Bell*,
630 F.2d 1046 (5th Cir. 1980)........................................................................48

*Baker v. McCollan*,
443 U.S. 137 (1979) ........................................................................................40

*Benavente v. Raycraft*,
820 F. Supp. 3d 661 (W.D. Mich. 2025)...................................................... 19, 33

*Blanchard v. Forrest*,
71 F.3d 1163 (5th Cir. 1996)..........................................................................22

*Buenrostro-Mendez v. Bondi*,
166 F.4th 494 (5th Cir. 2026)......................................................... 15, 44, 45, 46

*Butler Aviation Int'l v. Whyte (In re Fairchild Aircraft Corp.)*,
6 F.3d 1119 (5th Cir. 1993)......................................................................... 28, 29

*Campo-Caberra v. Noem*,
No. 5:26-CV-0846-JKP, 2026 WL 911415 (W.D. Tex. Mar. 20, 2026)...... 34, 47

*Castro v. Cabrera*,
742 F.3d 595 (5th Cir. 2014)............................................................................1

*Chevron USA, Inc. v. Aker Mar. Inc.*,
689 F.3d 497 (5th Cir. 2012)..........................................................................23

*Cinel v. Connick*,

15 F.3d 1338 (5th Cir. 1994) ....................................................................25

*Coal. for Humane Immigr. Rts. v. Noem*,
805 F. Supp.3d 48 (D.D.C. 2025)....................................................................5

*Collins v. City of Harker Heights*,
503 U.S. 115 (1992) ....................................................................17

*Conejo Arias v. Blanche*,
No. 26-1913 (2d Cir.) .................................................................... 11, 37

*County of Riverside v. McLaughlin*,
500 U.S. 44 (1991) .................................................................... 39, 40

*Cox v. McBride*,
279 F.3d 492 (7th Cir. 2002) ....................................................................32

*Craig v. Bisignano*,
157 F.4th 773 (5th Cir. 2025) ....................................................................14

*FDIC v. Mijalis*,
15 F.3d 1314 (5th Cir. 1994) ....................................................................27

*Ferrara v. United States*,
456 F.3d 278 (1st Cir. 2006) ....................................................................30

*Fratta v. Quarterman*,
536 F.3d 485 (5th Cir. 2008) ....................................................................15

*Gamez Lira v. Noem*,
No. 25-cv-00855, 2025 WL 2581710 (D.N.M. Sep. 5, 2025) ................ 39, 40, 41

*Garcia v. Orta*,
47 F.4th 343 (5th Cir. 2022) .................................................... 23, 25, 29

*German Santos v. Warden Pike Cnty. Corr. Facility*,
965 F.3d 203 (3d Cir. 2020) ....................................................................18

*Gerstein v. Pugh*,
420 U.S. 103 (1975) .................................................................... 39, 40, 41

*Gil Pirona v. Noem*,

No. 1:25-cv-1571, 2025 WL 3687339 (S.D. Mich. Dec. 19, 2025) ....................19

*Gonzalez v. ICE*,
975 F.3d 788 (9th Cir. 2020) ........................................................................41

*Hamer v. Neighborhood Hous. Servs. of Chicago*,
583 U.S. 17 (2017) ......................................................................................20

*Hammervold v. Blank*,
3 F.4th 803, 813 (5th Cir. 2021) ............................................................ 14, 35

*Hem v. Maurer*,
458 F.3d 1185 (10th Cir. 2006) ............................................................. 13, 30

*Hendricks v. Vasquez*,
908 F.2d 490 (9th Cir. 1990) ................................................................. 30, 32

*Hornbeck Offshore Servs., L.L.C. v. Salazar*,
713 F.3d 787 (5th Cir. 2013) ........................................................................21

*Imran v. Harper*,
No. 25-30370, 2026 WL 93131 (5th Cir. Jan. 13, 2026) ....................................52

*In re Tomlin*,
105 F.3d 933 (4th Cir. 1997) ........................................................................18

*Indigenous Peoples of Coastal Bend v. U.S. Army Corps of Engineers*,
132 F.4th 872 (5th Cir. 2025) .......................................................................22

*INS v. Lopez-Mendoza*,
468 U.S. 1032 (1984) ...................................................................................43

*INS v. Phinpathya*,
464 U.S. 183 (1984) .....................................................................................31

*John M. O'Quinn, P.C. v. Lexington Ins. Co.*,
906 F.3d 363 (5th Cir. 2018) ................................................................. 20, 22

*Johnson v. Sawyer*,
120 F.3d 1307 (5th Cir. 1997) .......................................................................53

*Kenzhebaev v. Noem*,

820 F. Supp. 3d 647 (W.D. Mich. 2025) ............................................................19

*Liteky v. United States*,
510 U.S. 540 (1994) .............................................................................. 49, 51

*Lopez-Arevelo v. Ripa*,
801 F. Supp. 3d 668 (W.D. Tex. 2025) ....................................................... 18, 47

*Lozada v. LaRose*,
No. 25cv3614-LL-KSC, 2026 WL 184205 (S.D. Cal. Jan. 23, 2026) .................19

*Lucky v. Calderon*,
86 F.3d 923 (9th Cir. 1996) ..........................................................................32

*Luna v. Sec'y, Dep't of Corr.*,
No. 8:20-CV-415-WFJ-AAS, 2023 WL 2456510 (M.D. Fla. Mar. 10, 2023) ....32

*M.D. by Stukenberg v. Abbott*,
119 F.4th 373 (5th Cir. 2024) ........................................................................53

*Makuiza v. Wesling*,
826 F. Supp. 3d 176 (D. Me. 2026) ...............................................................42

*Matthews v. Remington Arms Co., Inc.*,
641 F.3d 635 (5th Cir. 2011) .........................................................................21

*Morales v. Chadbourne*,
793 F.3d 208 (1st Cir. 2015) .........................................................................36

*Morrissey v. Brewer*,
408 U.S. 471 (1972) ......................................................................................47

*Munaf v. Geren*,
553 U.S. 674 (2008) ......................................................................................44

*Munoz Materano v. Arteta*,
804 F. Supp. 3d 395 (S.D.N.Y. 2025) ............................................................38

*Osuna Benitez v. Hermosillo*,
No. 2:25-cv-02534-BAT, 2025 WL 3763932 (W.D. Wa. Dec. 30, 2025) ..........19

*Pack v. Yusuff*,

218 F.3d 448 (5th Cir. 2000) ........................................................................15

*Pegues v. Morehouse Par. Sch. Bd.*,
706 F.2d 735 (5th Cir. 1983) ........................................................................25

*Pesina-Sanchez v. Thompson*,
No. 5:26-cv-00576-FB, Dkt. 7 (W.D. Tex. Feb. 25, 2026).................................18

*Procter & Gamble Co. v. Amway Corp.*,
376 F.3d 496 (5th Cir. 2004) ........................................................................20

*Ramirez Ovando v. Noem*,
810 F. Supp. 3d 1209 (D. Colo. 2025) ...............................................................36

*Ray v. Comm'r of Internal Revenue*,
13 F.4th 467 (5th Cir. 2021) .................................................................. 13, 28, 29

*Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*,
64 F.4th 287 (5th Cir. 2023) .................................................................. 23, 24, 25

*Rocha Rosado v. Figueroa*,
2025 WL 2349133 (D. Ariz. Aug. 13, 2025) .....................................................38

*Rollins v. Home Depot USA*,
8 F.4th 393 (5th Cir. 2021)............................................................. 20, 21, 23, 24

*Rosado v. Figueroa*,
No. 25-cv-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025)..........................38

*Salazar v. Dedos*,
830 F. Supp. 3d 1110 (D.N.M. Feb. 27, 2026) ...................................................42

*Sanchez v. United States*,
No. 5:12-CR-842-01, 2015 WL 11112503 (S.D. Tex. Apr. 7, 2015)..................33

*Santana v. Cox*,
No. 2:20-CV-00298, 2021 WL 5167740 (S.D. Tex. Oct. 14, 2021)....................32

*Santiago v. Noem*,
No. EP-25-CV-361-KC, 2025 WL 2606118 (W.D. Tex. Sep. 9, 2025)............52

*Scheanette v. Quarterman*,

309 Fed. App’x 870 (5th Cir. 2009) .....31

*Sec. & Exch. Comm’n v. Barton*,
135 F. 4th 206 (5th Cir. 2025) ..... 49, 51, 52

*Snapt Inc. v. Ellipse Commc’ns Inc.*,
430 F. App’x 346 (5th Cir. 2011) .....26

*Sorto v. Guerrero*,
No. 22-70013, 2025 WL 1527760 (5th Cir. May 29, 2025) .....48

*Sosnava Rodriguez v. Ortega*,
180 F.4th 702 (5th Cir. 2026) ..... 46, 47

*Sosnava Rodriguez v. Ortega*,
181 F.4th 608 (5th Cir. 2026) .....47

*Sosnava Rodriguez v. Ortega*,
No. 26-50183 (5th Cir.) .....46

*State Indus. Prods. Corp. v. Beta Tech. Inc.*,
575 F.3d 450 (5th Cir. 2009) .....25

*Steadman v. Tex. Rangers*,
179 F.3d 360 (5th Cir. 1999) .....18

*Sweet Life v. Dole*,
876 F.2d 402 (5th Cir. 1989) .....14

*Thomas v. Ameritas Life Ins. Corp.*,
34 F.4th 395 (5th Cir. 2022) .....27

*Trump v. Illinois*,
607 U.S. ----, 146 S. Ct. 432 (2025) .....36

*U.S. Bank Nat. Ass’n v. Verizon Commc’ns, Inc.*,
761 F.3d 409 (5th Cir. 2014) ..... 12, 20

*United States v. Bowen*,
799 F.3d 336 (5th Cir. 2015) .....53

*United States v. Burger*,

170 F.4th 395 (5th Cir. 2026) .......... 51

*United States v. Calderon*,
No. 25-30294, 2026 WL 817479 (5th Cir. Mar. 25, 2026) .......... 26

*United States v. Guillen-Cruz*,
853 F.3d 768 (5th Cir. 2017) .......... 24

*United States v. Khan*,
997 F.3d 242 (5th Cir. 2021) .......... 48, 49, 53

*United States v. Morgan*,
147 F.4th 522 (5th Cir. 2025) .......... 23

*United States v. Ogle*,
415 F.3d 382 (5th Cir. 2005) .......... 22

*United States v. Scroggins*,
599 F.3d 433 (5th Cir. 2010) .......... 27

*United States v. Stanford*,
883 F.3d 500 (5th Cir. 2018) .......... 14, 49

*United States v. Swenson*,
894 F.3d 677 (5th Cir. 2018) .......... 53

*United States v. United Mine Workers of Am.*,
330 U.S. 258 (1947) .......... 52

*Urquilla-Ramos v. Trump*,
821 F. Supp. 3d 603 (S.D.W. Va. 2026) .......... 39, 44

*Villegas-Gonzalez v. Lynch*,
No. 1:25-cv-1795, 2025 WL 3767939 (W.D. Mich. Dec. 31, 2025) .......... 19

*Warren v. Chesapeake Expl., L.L.C.*,
759 F.3d 413 (5th Cir. 2014) .......... 26

*Washington v. Glucksberg*,
521 U.S. 702 (1997) .......... 17

*Webb v. Thaler*,

384 F. App'x 349 (5th Cir. 2010) .......... 48

*Weber v. Garza*,
570 F.2d 511 (5th Cir. 1978) .......... 32

*Wilcox v. Wild Well Control, Inc.*,
794 F.3d 531 (5th Cir. 2015) .......... 28

*Wright v. ASI Lloyds*,
No. 23-40719, 2025 WL 1588832 (5th Cir. June 5, 2025) .......... 12, 22, 23

*Wright v. United States*,
178 F.3d 1298, 1998 WL 670018 (6th Cir. 1998) .......... 30

*XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*,
513 F.3d 146 (5th Cir. 2008) .......... 28

*Yohey v. Collins*,
985 F.2d 222 (5th Cir. 1993) .......... 26

*Zadvydas v. Davis*,
533 U.S. 678 (2001) .......... 1

## **STATUTES**

28 U.S.C. § 1291 .......... 3

28 U.S.C. § 1331 .......... 3

28 U.S.C. § 2241 .......... 3, 43

28 U.S.C. § 2242 .......... 13, 31

28 U.S.C. § 2243 .......... 50

28 U.S.C. § 2253(a) .......... 3

28 U.S.C. § 2254 .......... 29

28 U.S.C. § 2255 .......... 30

8 U.S.C. § 1182(d)(5)(A) .......... 5, 33

8 U.S.C. § 1225 .......... 8, 45

8 U.S.C. § 1225(b)(2) .......... 44, 45

8 U.S.C. § 1226 .......... 8, 45

8 U.S.C. § 1252(g) .......... 52

8 U.S.C. § 1357(a)(2) .......... 35, 36, 38, 41

## RULES

5th Cir. R. 28.2.1 .......... i

5th Cir. R. 32.1 .......... 56

Fed. R. App. P. 10(a) .......... 4

Fed. R. App. P. 28 .......... 22

Fed. R. App. P. 28(a)(8)(A) .......... 22

Fed. R. App. P. 32(a)(5) .......... 56

Fed. R. App. P. 32(a)(6) .......... 56

Fed. R. App. P. 32(a)(7)(B) .......... 56

Fed. R. App. P. 32(f) .......... 56

Fed. R. App. P. 34(a)(2) .......... iii

Fed. R. Civ. P. 11 .......... 31

## REGULATIONS

8 C.F.R. § 212.5(b) .......... 5, 33, 47

8 C.F.R. § 287.3 .......... 41, 42, 43

8 C.F.R. § 287.3(a) .......... 42

8 C.F.R. § 287.3(b) .......... 42

8 C.F.R. § 287.3(c) .......... 42

8 C.F.R. § 287.3(d) .......... 42

8 C.F.R. § 287.8(c) .......... 35

8 C.F.R. § 287.8(c)(2)(ii) .......... 36

## INTRODUCTION

The Fifth Amendment's Due Process Clause protects "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). And "[a]s a general matter" the Fourth Amendment "applies to [noncitizens] within U.S. territory." *Castro v. Cabrera*, 742 F.3d 595, 599 (5th Cir. 2014).

This appeal involves the warrantless arrest and detention, without individualized process, of a five-year-old boy, L.C.R., and his father, Adrian Conejo Arias (the "Conejo Family"). The Conejo Family entered the United States lawfully through the CBP One application in December 2024; submitted an asylum application in November 2025; and resided peacefully in Minnesota while awaiting the determination of that application. Nevertheless, on January 20, 2026, Immigration and Customs Enforcement ("ICE") officers stumbled upon Mr. Conejo and L.C.R. and arrested them both—despite admitting they were looking for someone else. Respondents-Appellants ("Government") then sent the family to the other end of the United States to an immigration detention center in Dilley, Texas.

On January 24, 2026, the Conejo Family filed an Emergency Petition for Writ of Habeas Corpus in the Western District of Texas. Their first and central claim for release asserted a due process violation. They also asserted, among others, a Fourth Amendment claim. On January 31, 2026, the District Court granted the habeas

petition, after having ordered the Government to distinguish the Conejo Family's case from seven others in which courts had ordered release on due process grounds, and following briefing on the due process claim. Unsurprisingly, the District Court rested its order on due process principles, calling on the Government to provide a "modicum of due process" and to follow "proper legal procedures." And in its judgment, the District Court ordered that the Government must provide the Conejo Family with a bond hearing in the event that they are re-detained.

The Government now appeals the District Court's order, raising a smorgasbord of purported errors. Yet it never mentions or discusses the District Court's due process holding, and has therefore abandoned any argument that the holding was in error. This Court thus can and should affirm the District Court on that ground alone. Alternatively, this Court can affirm the District Court's judgment because the Conejo Family's detention, predicated on a warrantless arrest without probable cause, also violated the Fourth Amendment and related laws and regulations—and the government failed to argue otherwise in the lower court. If the Court does not affirm on either of these bases, however, it should remand the case to the District Court for further proceedings.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction over this habeas matter under 28 U.S.C. §§ 1331 and 2241. The District Court granted the petition for writ of habeas corpus on January 31, 2026, and the Government filed an appeal on April 1, 2026. This Court has jurisdiction over this appeal under 28 U.S.C. §§ 1291 and 2253(a).

## STATEMENT OF THE ISSUES

1) Whether the Government waived or forfeited its right to challenge the District Court's due process holding by failing to brief it after the parties presented the due process arguments below.
2) Whether this Court should affirm because the record supports a holding that the Conejo Family was detained in violation of the Fourth Amendment and/or related laws and regulations.
3) Whether remand is appropriate, and whether the Government has carried its burden to justify its extraordinary request for reassignment on remand.

## STATEMENT OF THE CASE[1]

### I. Factual Background

This appeal arises from immigration officers' warrantless arrest and detention of a five-year-old boy and his father near their home in Minnesota. ROA.7, 11-13. A federal district court in Texas granted habeas corpus relief and ordered the family's release from immigration detention. ROA.101-05. The Conejo Family defends this grant on appeal. ROA.114.

Mr. Conejo and his son are asylum seekers who made a CBP One appointment to enter the United States. ROA.11. CBP One was a mobile device application launched by CBP in 2020 which provided travelers access to certain CBP functions before arriving in the United States. *CBP One: An Overview*, Am. Immigr. Council (Mar. 24, 2025), https://www.americanimmigrationcouncil.org/fact-sheet/cbp-one-overview/. The application allowed immigrants to schedule appointments at designated ports of entry, arrange for inspection by CBP personnel, and begin the U.S. asylum process. *Id.* In 2024, "DHS [was] directing noncitizens to use the CBP One mobile application as the primary, if not exclusive, mechanism to seek parole and/or asylum at the southwestern border." *Coal. for Humane Immigr. Rts. v. Noem*,

---

[1] The Government's statement of the case contains a large number of inaccuracies, and its factual background depends heavily on an extra-record declaration that is not in the record on appeal. Gov. Br. 12-13; Dkts. 64, 76. Petitioners-Appellees' statement of the case is based on the record on appeal. Fed. R. App. P. 10(a).

805 F. Supp.3d 48, 66 (D.D.C. 2025). The Conejo Family fully complied with that process to enter lawfully: they made a CBP One appointment and attended that appointment at a designated port of entry. ROA.9, 11.

The federal government then paroled the Conejo Family into the United States on December 14, 2024, under 8 U.S.C. § 1182(d)(5)(A). ROA.11, 35-36. Section 1182(d)(5)(A) allows the federal government to parole noncitizens who "present neither a security risk nor a risk of absconding" for "urgent humanitarian reasons" or "significant public benefit[.]" 8 C.F.R. § 212.5(b); 8 U.S.C. § 1182(d)(5)(A); ROA.19-20. Both father and son were issued an I-94 with admission class "DT" and a Notice to Appear ordering them to appear in Immigration Court on February 24, 2026. ROA.35-44. Mr. Conejo filed an asylum application around November 12, 2025, listing his son L.C.R. as a derivative. ROA.11. The Conejo Family's asylum application was pending adjudication during January 2026. ROA.9, 11. Mr. Conejo has no criminal record. ROA.11.

On January 20, 2026, L.C.R. was attending pre-kindergarten in Minnesota. *Id.* Mr. Conejo drove his vehicle and picked up L.C.R. from school. *Id.* Upon arrival at home, ICE officers approached them. ROA.11-12. Mr. Conejo exited the vehicle and shouted for help but he did not run away or resist. ROA.12. When the officers approached him, he stopped shouting and complied. *Id.* Mr. Conejo remained immediately outside the car until ICE officers moved him away from his child and

put him in the ICE vehicle. *Id.* At no point did Mr. Conejo abandon L.C.R. or run away from the car where his son was sitting. *Id.*

After the officers placed Mr. Conejo in the ICE vehicle, the officers informed him that they were looking for a different person—a woman they believed was the owner of the vehicle that Mr. Conejo had been driving. *Id.* The officers indicated that they were not looking for L.C.R. or Mr. Conejo. *Id.*

The ICE officers then removed five-year-old L.C.R. from his father's car. ROA.9, 12. They walked the child toward his house. ROA.12. When they reached the door, the officers attempted to use L.C.R. to make the people inside the house open the door. *Id.* The people inside the house did not open the door to the officers. *Id.*

There were many community members and other individuals present who offered to care for L.C.R., including someone who lived with the Conejo Family. ROA.13. Instead, the ICE officers placed the five-year-old in the backseat of the ICE vehicle and drove away with L.C.R. and his father. *Id.* Unlike the vehicle that Mr. Conejo drove to pick up L.C.R. from school, the ICE vehicle did not have a child's carseat. *Id.*

The officers drove the Conejo Family around for about an hour. *Id.* They eventually arrived at the Whipple Federal Building in Minneapolis, Minnesota. ROA.14. The government officials there did not ask for any information from Mr.

Conejo and L.C.R. besides their names and dates of birth. *Id.* The officials did not review any documentation. *Id.* L.C.R. was the only child present at the Whipple Federal Building. *Id.*

Mr. Conejo and L.C.R. were eventually taken to a hotel, where they were forced to spend the night in a hotel room with two ICE officers. *Id.* Early the next morning, government agents transported L.C.R. and his father to the Minneapolis-Saint Paul International Airport, where they were boarded onto an airplane. *Id.* After landing in Texas, Mr. Conejo and L.C.R. were then transported and detained at the Dilley Immigration Processing Center in Dilley, Texas. *Id.*

## II. Procedural History

On January 24, 2026, Mr. Conejo and L.C.R. filed an Emergency Petition for Writ of Habeas Corpus through counsel in the U.S. District Court for the Western District of Texas, along with an Emergency Motion for Preliminary Injunction and Temporary Restraining Order ("PI and TRO Motion") and a Motion for Order to Show Cause. ROA.3, 7-78. A signed and dated habeas verification under 28 U.S.C. § 2242 was attached to the end of the PI and TRO Motion. ROA.75.

In their habeas petition and accompanying motions, the Conejo Family argued that 1) their re-detention without process after the federal government paroled and released them violated their Fifth Amendment due process rights; 2) their warrantless arrest and detention lacked probable cause and violated their Fourth

Amendment rights against unlawful seizures; 3) their detention should be set aside under the Administrative Procedure Act because it was, *inter alia*, contrary to the agency's constitutional authority under the Due Process Clause; 4) their detention should be set aside under the *Accardi* doctrine because ICE violated its own procedures for an enforcement action involving a minor child; and 5) 8 U.S.C. § 1225 no longer authorized their detention because they were no longer "arriving aliens." ROA.21-31.

On January 26, 2026, the District Court ordered the Government to respond within five days of service and provided a list of cases for the Government to distinguish involving the statutory interpretation of the immigration detention statutes 8 U.S.C. §§ 1225 and 1226. ROA.82-84. On January 29, 2026, the District Court issued another order requiring the Government to respond by 3:00 p.m. on January 30, 2026. ROA.86-87. This order provided a list of cases for the Government to distinguish involving constitutional due process protections and CBP One parolees. *Id.* The Government filed a timely response on January 30, 2026. ROA.88-100. The response included an exhibit showing the Conejo Family's next Immigration Court hearing date in February 2026. ROA.99-100. It did not file a motion to extend time to file its response or otherwise request an extension.

On January 31, 2026, the District Court granted the Conejo Family's habeas petition and ordered their release. ROA.101-05. Ruling on Mr. Conejo's and

L.C.R.'s request for "some modicum of due process and the rule of law," the District Court found that the Government did not provide adequate due process in the arrest and detention of the Conejo Family. ROA.101-03. The Court emphasized that incarceration and deportation require following "proper legal procedures" and that "a more orderly and humane policy" should govern the Conejo Family's legal process. ROA.101, 103. After quoting the Fourth Amendment, the District Court also evaluated the process involved in issuing administrative warrants and stated that such warrants "do not pass probable cause muster." ROA.102. The District Court ultimately concluded that "the Constitution of these United States trumps this administration's detention of petitioner Adrian Conejo Arias and his minor son, L.C.R." and granted habeas relief. *Id.*

In its judgment, the Court ordered that the Government release Mr. Conejo and L.C.R. from custody "as soon as practicable, but in any event, no later [than] Tuesday, February 3, 2026." ROA.104 (emphasis removed). In addition, the Court ordered that "all applicable procedures must be followed" if the Conejo Family were re-detained. ROA.105. The Court included that the Conejo Family must be afforded a bond hearing as part of those procedures. *Id.* The Government released Mr. Conejo and his five-year-old son pursuant to the court's order and judgment on January 31, 2026. ROA.108.

On April 1, 2026, the Government filed a notice of appeal to the U.S. Court of Appeals for the Fifth Circuit, challenging the District Court's order and judgment granting the Conejo Family's habeas petition and release from detention. ROA.114-15. In addition to filing its opening brief, the Government moved to supplement the record on appeal with new evidence. Dkts. 35, 39. The Conejo Family responded, opposing the motion but filing a conditional cross-motion to supplement with its own new evidence in the event the Court decided to grant the Government's motion. Dkt. 37. The Government filed a reply and opposed the Conejo Family's conditional cross-motion. Dkt. 54.

On August 24, 2026, a circuit judge of this Court denied the Government's motion to supplement the record on appeal with new evidence and denied as moot the Conejo Family's conditional cross-motion to supplement. Dkt. 64. On September 3, 2026, the Government filed a motion for partial reconsideration of that order, requesting that the three-judge merits panel allow the Government to supplement the record with one of the two new exhibits it had initially sought to introduce on appeal. Dkt. 67. On September 14, 2026, a three-judge motion panel denied the Government's partial reconsideration motion. Dkt. 76.

The Conejo Family is continuing to litigate their immigration case. After they filed their asylum application around November 12, 2025, ROA.11, an Immigration Judge ("IJ") in New York pretermitted and denied their application for asylum,

withholding of removal, and Convention Against Torture protections and ordered them removed on February 19, 2026. The Conejo Family timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). The BIA affirmed pretermission and dismissed the Conejo Family's appeal on June 15, 2026. The Conejo Family timely filed a Petition for Review ("PFR") and motion for stay of removal at the Second Circuit, challenging the BIA's decision. *Conejo Arias v. Blanche*, No. 26-1913, Dkts. 1, 23 (2d Cir.). The PFR and motion for stay are currently pending.

## SUMMARY OF THE ARGUMENT

The Government impermissibly seeks to vacate a reasoned order and judgment by the District Court granting habeas relief for its own unlawful arrest and detention of the Conejo Family. None of the grounds under which the Government argues the District Court's order is extraordinary or unsupported is persuasive. To the contrary, the District Court correctly ruled on the legal issue which the Conejo Family presented as their first and leading claim: constitutional due process. The Government's failure to address due process resolves this appeal, and this Court should summarily affirm.

*First*, the Government argues that the District Court violated the party-presentation principle by failing to grant the petition on any issue raised by the

parties. That is incorrect. The District Court granted the Conejo Family's petition at least partly on the basis that the detention violated their due process rights. *See* ROA.101-05. Indeed, the due process grounds are expressly referenced at multiple points in the order, which followed the Conejo Family's pleading of due process claims in their original petition for habeas relief and the Government's briefing of due process issues *at length* in the district court proceedings. ROA.16, 21-25, 88, 92-95, 101-05.

In fact, it is the Government that elected not to challenge the District Court's due process ground for the grant of the petition on appeal to this Court, and accordingly waives that issue. *See generally* Gov. Br. Indeed, the Government's waiver of that central issue on appeal is dispositive here: "When an appellant challenges only one of the district court's alternative holdings, any argument that the alternative holding was in error is waived[,]" and the appeal on that issue "necessarily fails." *See U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 439 n.24 (5th Cir. 2014) (citation omitted). The Government cannot demonstrate the "extraordinary circumstances" necessary to allow this Court to address "arguments not raised . . . in the party's opening brief." *See Wright v. ASI Lloyds*, No. 23-40719, 2025 WL 1588832, at *3 (5th Cir. June 5, 2025). And the Government's waiver of the issue of due process does not mean that the District

Court did not consider and grant habeas relief on that basis. This Court should affirm the grant of habeas corpus relief on the District Court's due process holding.

*Second*, the Government erroneously characterizes the record below as evidence-free because Mr. Conejo did not sign to verify the petition, but it failed to press any such argument before the District Court. *Compare* Gov. Br. 12 n.1, 14-15, 23 *with* ROA.97. The Government's expansive appellate arguments about Mr. Conejo's missing signature are therefore waived or forfeited. *See Ray v. Comm'r of Internal Revenue*, 13 F.4th 467, 476 (5th Cir. 2021). Even if the Court were to consider such arguments, the habeas petition was properly verified by the Conejo Family's attorney, as the law allows. *See* 28 U.S.C. § 2242. Further, even if the petition were not verified, the District Court could still properly consider the facts therein, and the lack of verification would not deprive the District Court or this Court of jurisdiction. *See, e.g.*, *Hem v. Maurer*, 458 F.3d 1185, 1201 n.6 (10th Cir. 2006). Both parties also submitted documentary evidence below. ROA.35-55, 99-100.

*Third*, this Court may also affirm the District Court's grant of the petition for habeas relief based on the Government's violation of the Conejo Family's rights under the Fourth Amendment or related laws and regulations due to their warrantless arrest and detention. Although the District Court clearly did not address the claim of warrantless arrest, this Court "may affirm on any ground supported by the record, including one not reached by the district court." *Hammervold v. Blank*, 3 F.4th 803,

813 (5th Cir. 2021). The Government's Fourth Amendment arguments on appeal depend heavily and improperly on documents that are not in the record. Gov. Br. 1-2, 5-6, 12-13, 18, 23-25, 27, 36-38; Dkts. 64, 76.[2] The record on appeal *does* show, however, that the Government did not have the requisite probable cause to arrest Mr. Conejo or his five-year-old son L.C.R., nor did a neutral and detached magistrate or official determine probable cause within 48 hours to continue the family's detention. ROA.11-14.

*Lastly*, if this Court concludes the District Court did not grant the petition for habeas relief on due process grounds or otherwise determines that the District Court should consider whether the Conejo Family's warrantless arrest and detention violated the Fourth Amendment, it should remand for the District Court to consider these claims in the first instance without reassignment. The Government cannot meet the high standard to justify the extraordinary remedy of reassignment on remand based on the District Court's order and judgment. *See United States v. Stanford*, 883 F.3d 500, 516 (5th Cir. 2018).

[2] In conducting its appellate review, this Court is "barred from considering filings outside the record on appeal." *Craig v. Bisignano*, 157 F.4th 773, 774 (5th Cir. 2025) (quoting *Sweet Life v. Dole*, 876 F.2d 402, 408 (5th Cir. 1989) (citation modified)). This Court should accordingly disregard all portions of the Government's brief which depend on outside records, *e.g.*, Gov. Br. 1-2, 5-6, 12-13, 18, 23-25, 27, 36-38.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of a petition for writ of habeas corpus under 28 U.S.C. § 2241. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026) (citing *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000)); *see also Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008).

## ARGUMENT

### I. This Court should summarily affirm the District Court's grant on due process grounds because that decision was correct and the Government fails to challenge it on appeal.

The District Court's order demonstrates it rested its judgment on, at the very least, the ground that the Conejo Family's detention violated constitutional due process. Yet the Government's opening brief does not challenge the District Court's due process holding, despite acknowledging the Conejo Family's leading claim below was their due process claim. Gov. Br. 14, 19-21. Instead, the Government argues, without basis, that the District Court did not grant habeas relief based on *any* of the grounds raised by the Conejo Family, and erroneously asserts that the District Court's "sua sponte decision" rested on the conclusion that administrative warrants violate the Fourth Amendment. Gov. Br. 20.

Because there is no mention of administrative warrants in the record before the District Court, and the Conejo Family was not arrested pursuant to any warrant,

it is purely speculative that the District Court's discussion of administrative warrants constitutes an *alternative* holding that the Conejo Family was entitled to relief under that basis pursuant to the Fourth Amendment. Either way, the Government's focus on the District Court's discussion of administrative warrants is immaterial because (1) this Court may affirm the District Court's order and judgment based on the aforementioned constitutional due process grounds and (2) the Government failed to appeal and brief the District Court's due process holding. As a result, the Government has waived or forfeited its ability to challenge the District Court's holding on this basis, and this Court should summarily affirm.[3]

### A. The Conejo Family sought, and the District Court granted, relief on constitutional due process grounds.

The District Court's order plainly rested on the ground that the Conejo Family's detention was unconstitutional because it violated due process.

To start, the District Court's opinion opened by noting that the Conejo family sought "nothing more than some modicum of *due process* and rule of law." ROA.101 (emphasis added). It then reasoned that while "[t]his Court and others

[3] The Conejo Family does not ask this Court to affirm on the basis of any administrative warrant-based Fourth Amendment holding, to the extent there was one, because it has no bearing on this Court's ability to affirm on the basis that the Government failed to appeal the District Court's due process holding. However, as discussed later in this brief, this Court may also affirm based on the record that the Government arrested and detained Mr. Conejo and L.C.R. without a warrant and without probable cause, which is an issue the District Court did not reach. *See infra*, Section III.A.

regularly send undocumented people to prison and order[] them deported," such action must be undertaken through "proper legal *procedures*." ROA.101 (emphasis added). The District Court then opined that "[a]pparent also is the government's ignorance of . . . the Declaration of Independence," and listed numerous grievances from that document, ROA.102. Each grievance touches upon the concerns underlying the Supreme Court's instruction that the Due Process Clause "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them," *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citation modified); *see also Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (noting that courts must look to our "Nation's history and tradition" in assessing questions of due process). It was only after this that the District Court then reached any ostensible alternative Fourth Amendment holding, offset by a paragraph break: "*And then* there is that pesky inconvenience called the Fourth Amendment." ROA.102 (emphasis added).

The plain language of the District Court's order thus demonstrates that constitutional due process underlies its grant of the Conejo Family's petition. Moreover, the separate judgment entered by the District Court evinces the court's reliance on due process grounds: it orders that Mr. Conejo and his child receive a bond hearing in the event that they are re-detained. ROA.105. This guarantee of additional procedural rights and protections is consistent with the remedy for a due

process violation.[4] *E.g.*, *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213 (3d Cir. 2020) (providing a bond hearing as a remedy to a due process violation); *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 687-88 (W.D. Tex. 2025) (same).

Finally, even if the District Court's grounds for granting the petition for habeas relief is construed to be vague as written in the order, this Court reviews the underlying record "to determine what facts the district court . . . likely assumed." *See Steadman v. Tex. Rangers*, 179 F.3d 360, 366 (5th Cir. 1999); *In re Tomlin*, 105 F.3d 933, 940 (4th Cir. 1997) ("When an order is ambiguous, a court 'must construe its meaning, and in so doing may resort to the record upon which the judgment was based.'"). Here, the original petition, the PI and TRO motion, the District Court's order requiring the Government's response, and the Government's subsequent response brief confirm that constitutional due process considerations predominated. The Conejo Family's first and central claim for habeas relief below rested upon due process grounds, and the parties, including the Government, fulsomely briefed that claim. *See* ROA.16, 21-25 (due process claim in Conejo Family's petition); ROA.70-74 (due process briefing in Conejo Family's PI and TRO motion); ROA.88,

[4] Indeed, the same District Court ordered a bond hearing to remedy the violation of a habeas petitioner's due process rights in another case the month after issuing the decision in this case. *Pesina-Sanchez v. Thompson*, No. 5:26-cv-00576-FB, Dkt. 7 at 2-6 (W.D. Tex. Feb. 25, 2026) (Biery, J.).

92-95 (Government's briefing opposing due process claim). Indeed, in the briefing below, the Government did not even argue the substance of the Fourth Amendment issues that were raised by the Conejo Family. *Compare* ROA.92-95 *with* ROA.97. Rather, because of the primacy of the Conejo Family's due process claim, the District Court listed *seven different cases* analyzing detentions in terms of due process and ordered the Government to address whether they were "applicable to the instant case" in its required response. ROA.86-87. *None* of the cases identified by the District Court involved the Fourth Amendment.[5]

Altogether, it is apparent that the District Court's order rested on due process grounds separate from and in addition to any applicable Fourth Amendment grounds. That follows from the plain language of the District Court's order; the separate judgment it entered; and the context provided by the Conejo Family's petition, the parties' briefing, and the District Court's request that the Government distinguish an extensive list of due process-based decisions in the Government's response.

[5] These cases were *Lozada v. LaRose*, No. 25cv3614-LL-KSC, 2026 WL 184205 (S.D. Cal. Jan. 23, 2026); *Akilov v. LaRose*, No. 25-CV-3831 JLS (BJW), 2026 WL 74289 (S.D. Cal. Jan. 9, 2026); *Villegas-Gonzalez v. Lynch*, No. 1:25-cv-1795, 2025 WL 3767939 (W.D. Mich. Dec. 31, 2025); *Benavente v. Raycraft*, 820 F. Supp. 3d 661 (W.D. Mich. 2025); *Osuna Benitez v. Hermosillo*, No. 2:25-cv-02534-BAT, 2025 WL 3763932 (W.D. Wa. Dec. 30, 2025); *Kenzhebaev v. Noem*, 820 F. Supp. 3d 647 (W.D. Mich. 2025); and *Gil Pirona v. Noem*, No. 1:25-cv-1571, 2025 WL 3687339 (S.D. Mich. Dec. 19, 2025). ROA.86-87.

### B. Because the Government challenges only the District Court's purported alternative holding on Fourth Amendment grounds, it has waived or forfeited any argument that the due process holding was wrong.

The Government has not and now cannot challenge the District Court's due process holding, regardless of whether its arguments are considered waived or forfeited. As this Court and the Supreme Court have noted, "waiver" and "forfeiture" are "often used interchangeably by jurists and litigants." *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) (quoting *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 n.1 (2017)); *compare Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.") *with Rollins*, 8 F.4th at 397 ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal.").

"When an appellant challenges only one of the district court's alternative holdings, any argument that the alternative holding was in error is waived," and "its appeal [on that issue] necessarily fails." *See U.S. Bank Nat. Ass'n*, 761 F.3d at 439 n.24 (citation omitted). Said another way, because there is "no indication in [the Government's] briefing that it intended to assail the district court's consideration" of due process, it has "waived th[o]se arguments." *John M. O'Quinn, P.C. v. Lexington Ins. Co.*, 906 F.3d 363, 371 (5th Cir. 2018) (finding that party had waived argument not contained in briefing but raised during oral argument). That remains

true irrespective of the Government's briefing of the issues in the district court. *See Matthews v. Remington Arms Co., Inc.*, 641 F.3d 635, 641 (5th Cir. 2011) (finding that although party "maintained" its argument in district court, "[i]nsofar as [it] makes this contention here, it has failed to adequately brief, and has, therefore, waived it"); *see also Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 796 (5th Cir. 2013) (holding that party had "waived" argument "because it has not been meaningfully briefed").

Here, the Government's opening brief makes no mention of due process (aside from two hurried mentions that the Conejo Family raised the claim below). Gov. Br. 14, 19. This is despite the prevalence of due process issues in the parties' briefing to the District Court and the District Court's reliance on them as a ground for the relief ordered. Instead, the Government focuses its efforts *solely* on the District Court's supposed alternative Fourth Amendment holding to the exclusion of any other grounds. Accordingly, it waived any challenge to the District Court's grant of the Conejo Family's habeas petition on due process grounds.

In the alternative, even if the Court finds that the Government did not *waive* the due process argument, the Government has surely *forfeited* its right to request review on due process. *See Rollins*, 8 F.4th at 397. And while there are very limited exceptions that allow consideration of forfeited arguments, none apply here. *See id.* at 398; *see also infra*, Section I.C.

In either event, the outcome is the same: the Government did not and now cannot challenge the District Court's due process holding on appeal because its opening brief never argues that the District Court considered—let alone granted relief on—constitutional due process grounds. *See* Fed. R. App. P. 28(a)(8)(A) (an appellant's opening brief must contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *John M. O'Quinn, P.C.*, 906 F.3d at 371 ("[F]ailure to satisfy the requirements of Rule 28 as to a particular issue ordinarily constitutes abandonment of the issue." (citation omitted)); *United States v. Ogle*, 415 F.3d 382, 383 (5th Cir. 2005) (per curiam) ("Our cases make it clear that an argument not raised in appellant's original brief as required by Fed. R. App. P. 28 is waived."); *Indigenous Peoples of Coastal Bend v. U.S. Army Corps of Engineers*, 132 F.4th 872, 884 (5th Cir. 2025) ("Any issue not raised in appellant's opening brief is forfeited.").

### C. The Government cannot demonstrate the extraordinary circumstances required to overcome its failure to challenge the District Court's due process holding.

The Court does not generally consider "issues or arguments not raised in the appellant's brief." *Blanchard v. Forrest*, 71 F.3d 1163, 1169 (5th Cir. 1996). The Government cannot demonstrate the rare and "extraordinary circumstances" necessary to allow this Court to address arguments that the appellant failed to raise in the first instance. *See Wright*, 2025 WL 1588832, at *3. "Extraordinary

circumstances exist when the issue involved is a pure question of law and a miscarriage of justice would result from [this Court's] failure to consider it." *Id.* at *3 (quoting *Chevron USA, Inc. v. Aker Mar. Inc.*, 689 F.3d 497, 503 (5th Cir. 2012)). They may also be shown "when the issue presents a pure legal question, and no prejudice will accrue to the [other side]." *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 64 F.4th 287, 292 (5th Cir. 2023) (citation modified).[6] Arguments concerning the court's subject matter jurisdiction are also excepted from the general rule. *Garcia v. Orta*, 47 F.4th 343, 349 (5th Cir. 2022).

*First*, the District Court's due process holding involved more than a pure question of law, and was predicated on the facts developed through the petition and briefing presented to it. Specifically, the Conejo Family argued that their detention by the Government was unconstitutional, as applied to their particular facts and circumstances, because it violated due process. *See* ROA.21-25; *United States v. Morgan*, 147 F.4th 522, 526 (5th Cir. 2025), *cert. denied*, 146 S. Ct. 1781 (2026) (An as-applied challenge asks whether a law is "unconstitutional as applied to [a person's] activity."). The Conejo Family's particular facts included that (1) the Government had already found the family was not a flight risk or danger; (2) they had previously been granted parole; (3) their detention did not follow any

[6] The same standard applies whether the Government's failure is characterized as waiver or forfeiture. *Wright*, 2025 WL 1588832, at *3 (forfeited arguments); *Reagan Nat'l*, 64 F.4th at 292 (waived arguments); *see also Rollins*, 8 F.4th at 398.

individualized explanation or evaluation; (4) that Mr. Conejo has no criminal record; and (5) that L.C.R. is a five-year old child who was in pre-kindergarten. ROA.23-25. This issue therefore does not involve a "pure legal question" of the sort that this Court may review notwithstanding the Government's abandonment, such as "the level of [First Amendment] scrutiny that applies to [a city's] Sign Code" after the U.S. Supreme Court "altered the existing legal standard." *See Reagan Nat'l*, 64 F.4th at 291-92 (applying new guidance from the Supreme Court upon remand).

*Second*, no "miscarriage of justice" will befall the Government should this Court not review the District Court's due process holding. *See Rollins*, 8 F.4th at 398. The Government had every opportunity and reason to raise the issue in its opening brief: the District Court ordered the Government to distinguish this case from others resolved on due process-related grounds; the parties fulsomely briefed the due process issues; the District Court's order discussed due process and legal procedures; and the District Court's judgment ordered due process-related relief. ROA.86-87, 101-05. Instead, the Government did not. There is no potential for a "miscarriage of justice" here. *See Rollins*, 8 F.4th at 399 (finding no "manifest injustice to correct" where "nothing prevented Rollins from alleging a fact dispute in the district court"); *United States v. Guillen-Cruz*, 853 F.3d 768, 777 (5th Cir. 2017) (refusing to address a forfeited issue where "the facts supporting the Government's argument . . . were readily available prior to briefing.").

*Third*, should this Court reopen the District Court's due process holding, that will prejudice the Conejo Family. *See Reagan Nat'l*, 64 F.4th at 292 (quoting *Pegues v. Morehouse Par. Sch. Bd.*, 706 F.2d 735, 738 (5th Cir. 1983)). The Conejo Family secured their release from immigration detention at least in part on the basis of that holding, and they have clear interests in its finality.

*Fourth*, there is no doubt of the Court's subject matter jurisdiction in this case, which further confirms the absence of an extraordinary circumstance for excusing forfeiture. *See Garcia*, 47 F.4th at 349; Gov. Br. 6 (acknowledging bases for jurisdiction).

As a result, the Government's abandonment of any argument that the District Court's due process holding was in error presents no extraordinary circumstances that justify departure from the ordinary rule that "[a]n appellant abandons all issues not raised and argued in its initial brief on appeal." *Reagan Nat'l*, 64 F.4th at 291 (quoting *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994)). The Government carries the burden to demonstrate such extraordinary circumstances, and it has not and cannot do so here. *See State Indus. Prods. Corp. v. Beta Tech. Inc.*, 575 F.3d 450, 456 (5th Cir. 2009) (noting that "the burden to establish extraordinary circumstances is on the party seeking review"). Finally, should the Government belatedly attempt to address the District Court's due process holding in its reply brief, this Court has made it clear that it properly disregards arguments "raised for

the first time in a reply brief." *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993); *accord Warren v. Chesapeake Expl., L.L.C.*, 759 F.3d 413, 420 (5th Cir. 2014).

* * *

In sum, the District Court's unchallenged due process holding was "independently sufficient to support" the order and judgment and this Court can and should summarily affirm. *See, e.g.*, *United States v. Calderon*, No. 25-30294, 2026 WL 817479, at *1 (5th Cir. Mar. 25, 2026); *accord Snapt Inc. v. Ellipse Commc'ns Inc.*, 430 F. App'x 346, 351 (5th Cir. 2011) (noting that failure to contest alternative ground for judgment constitutes waiver and court could affirm "on this ground alone").

## II. The District Court's decision rested on a proper evidentiary record and the Government has forfeited any argument to the contrary.

The Government asks this Court to reverse the District Court on a procedural hypertechnicality: that the Conejo Family's habeas petition was signed and verified by the Conejo Family's attorney, not Mr. Conejo himself. As a preliminary matter, the Government forfeited[7] this issue by failing to adequately raise it in the District Court. According to the Government, that the Conejo Family's attorney signed on behalf of her client means the entire case was purportedly decided in the absence of any evidentiary record. Gov. Br. 23. Nonsense. And even had the attorney's

[7] As discussed above, the same high bar to consideration applies whether the Government's failure is characterized as waiver or forfeiture. *See supra*, n.6.

verification not been sufficient, the District Court would have been entitled to treat the petition as verified. Finally, both parties filed documentary evidence in the district court proceedings, so the Government's contention that there is no evidentiary record is contradicted by its own submissions.

### A. The Government forfeited its argument that the petition was unverified.

In its response to the underlying habeas petition, the Government merely stated that "Petitioner raises these allegations without sworn written support." ROA.97. This threadbare observation in the Government's brief below did not preserve its much broader appellate argument that the District Court decided this case on "zero evidence." Gov. Br. 23 (emphasis removed).

In addition to a party forfeiting arguments it does not make in its opening appellate brief, *see supra*, Section I.B-C, "a party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal." *Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 402 (5th Cir. 2022) (citation modified). "[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court." *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994). At a minimum, pressing a claim "means clearly identifying a theory as a proposed basis for deciding the case—merely 'intimating' an argument is not the same as 'pressing' it." *United States v. Scroggins*, 599 F.3d 433, 447 (5th Cir. 2010) (citation modified).

"For an argument to be preserved, it must be raised to such a degree that the trial court may rule on it." *Ray*, 13 F.4th at 476 (citation modified). *See also Butler Aviation Int'l v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1128 (5th Cir. 1993) (concluding that "the argument here was not even identified by name, much less advocated" and thus did not meet the standard for preservation), *abrogated on other grounds as recognized in Wilcox v. Wild Well Control, Inc.*, 794 F.3d 531, 539 (5th Cir. 2015).

In *Ray*, an appellant whose "pre-trial submission merely mentioned [a prior] decision but did not assert collateral estoppel" failed to "raise his asserted collateral estoppel defense until his post-trial answering brief." 13 F.4th at 476. This Court concluded that Ray failed to preserve his defense because "the Tax Court does not consider issues raised for the first time in an answering brief." *Id.* Similarly, this Court held that a party who argued that two available defenses rendered it immune from suit did not sufficiently raise that the existence of the defenses rendered a settlement unreasonable. *XL Specialty Ins. Co. v. Kiewit Offshore Servs., Ltd.*, 513 F.3d 146, 153 (5th Cir. 2008). The party therefore failed to preserve this unreasonable settlement argument for appeal. *Id.*

Considering these precedents, the Government's brief discussion of the petition's verification below does not preserve the expansive arguments it now asserts on appeal. "The argument here"—that the petition's factual allegations

should be disregarded—"was not even identified by name, much less advocated" in the court below. *See In re Fairchild Aircraft Corp.*, 6 F.3d at 1128. In less than a paragraph, on its second-to-last page, in a section otherwise arguing that "Petitioner alleges non-habeas claims" that "should be severed and dismissed," the Government's district court brief stated this supposed deficiency with no further explanation. *See* ROA.97. Its only citation referenced a completely different habeas statute concerning state custody, not federal custody. *See id.* (citing 28 U.S.C. § 2254). The Government did not address the broader record—it ignored that the Petitioners' attorney concurrently filed a motion for a preliminary injunction and temporary restraining order, which included the attorney's verification on Petitioners' behalf. *See* ROA.75. And it did not invoke any case to assert what the consequences of this alleged deficiency should be—indeed, it did not request any related relief, providing no basis for the district court to rule on its argument. *See* ROA.97; *see also Ray*, 13 F.4th at 476.

No exception to this Court's forfeiture jurisprudence applies here. As already discussed, this Court may make exceptions for "arguments concerning (1) the court's subject matter jurisdiction and (2) purely legal matters when failure to consider the issue will result in a miscarriage of justice." *Garcia*, 47 F.4th at 349 (citation modified).

First, the Government does not argue that failure to sign a habeas petition deprives a court of subject matter jurisdiction. *Cf.* Gov. Br. 12 n.1, 23. Second, no "miscarriage of justice" would result from the Court's election not to consider the Government's argument. As discussed above, the Government failed to adequately challenge the petition's verification at the district court level. Moreover, any such challenge would have been futile. District court judges may simply disregard a petitioner's failure to sign in the normal course, and need not acknowledge that they have done so. *See*, *e.g.*, *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990) ("The respondents cite no authority for the proposition that it is reversible error for the district court to address the merits of an unverified petition. . . . the defect is one that the district court may, if it sees fit, disregard."); *Hem*, 458 F.3d at 1201 n.6 ("[T]he Government asked that the petition be dismissed because only Hem's counsel signed the petition. . . . We are not obligated, however, to dismiss the petition, and decline to do so."); *Ferrara v. United States*, 456 F.3d 278, 295 (1st Cir. 2006) (same in the 28 U.S.C. § 2255 context); *Wright v. United States*, 178 F.3d 1298, 1998 WL 670018, at *1 (6th Cir. 1998) (unpublished table opinion) (same).

### B. The Conejo Family's attorney verified the habeas petition on the family's behalf.

Even if it had not forfeited its argument, the Government is wrong to assert that the petition's factual allegations are unverified. Habeas petitions may be "signed and verified by the person for whose relief it is intended *or by someone acting in his*

*behalf*." 28 U.S.C. § 2242 (emphasis added). In this case, the Conejo Family's attorney verified "the events described in" the petition in the concurrently filed PI and TRO Motion. *See* ROA.75. That motion's recitation of the facts is taken nearly verbatim from the petition's recitation. *Compare* ROA.63-68, *with* ROA.11-16. And counsel signed the petition as required by Rule 11 of the Federal Rules of Civil Procedure, which threatens sanctions if the attorney does not reasonably believe that "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(a)-(c); ROA.32.

The Government nevertheless argues that without a personal declaration or verification by Mr. Conejo himself, "his attorney's allegations are just that—allegations, not evidence." Gov. Br. 12 n.1 (citing *INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984)). This absolutist description goes too far.

To start, the Government's reliance on *INS v. Phinpathya* is unpersuasive. *Id.* That case concerned an application for suspension of deportation, not a habeas action, *see* 464 U.S. at 185-86, so § 2242's explicit provision for verification by someone other than the petitioner did not apply.

Instead, as this Court and others have held, § 2242 allows detainees' attorneys to both prepare and file habeas petitions on the detainees' behalf, including the verification of its contents. *E.g.*, *Scheanette v. Quarterman*, 309 Fed. App'x 870, 873 (5th Cir. 2009); *see also Weber v. Garza*, 570 F.2d 511, 513-14 & n.6 (5th Cir.

1978) (per curiam); *Lucky v. Calderon*, 86 F.3d 923, 925 (9th Cir. 1996) ("[A] habeas petitioner's attorney can sign and verify the petition for the petitioner."); *Luna v. Sec'y, Dep't of Corr.*, No. 8:20-CV-415-WFJ-AAS, 2023 WL 2456510, at *3 (M.D. Fla. Mar. 10, 2023) (rejecting argument that petition was "factually insufficient" because attorney signed on behalf of petitioner). Mr. Conejo and L.C.R.'s counsel was therefore authorized to verify the factual allegations in their habeas petition, albeit through the vehicle of emergency relief briefing that duplicated the exact same allegations as in the petition itself.

### C. Even if the petition had not been verified, the District Court was authorized to consider it.

Finally, even if the Government did not forfeit this argument (it did), and even if it correctly described the habeas petition as unverified (it did not), "[t]he only authorized remedy [for failure to sign] is for the [district court] judge to return the unsigned petition to the applicant." *See Cox v. McBride*, 279 F.3d 492, 493-94 (7th Cir. 2002) (collecting cases and reversing denial of habeas petition where denial had been partially based on petitioner's failure to sign).

But that remedy is not mandatory. District courts are empowered to, and regularly do, disregard a petitioner's failure to sign while properly adjudicating habeas actions. *See*, *e.g.*, *Hendricks*, 908 F.2d at 491; *Santana v. Cox*, No. 2:20-CV-00298, 2021 WL 5167740, at *2 (S.D. Tex. Oct. 14, 2021) (disregarding failure to sign), *R.&R. adopted*, No. 2:20-CV-298, 2021 WL 5165688 (S.D. Tex. Nov. 5,

2021); *Sanchez v. United States*, No. 5:12-CR-842-01, 2015 WL 11112503, at *2 (S.D. Tex. Apr. 7, 2015) (considering petition "properly verified" despite repeated failure to sign petition). That makes sense: a court's determination of whether someone is unlawfully detained should not turn on hypertechnicalities like forgotten signatures. Thus, even if the petition here was deficient, the District Court clearly and permissibly disregarded any such deficiency.

**D. Documentary evidence was submitted with the habeas petition.**

Finally, the Government neglects to mention that there was documentary evidence affixed to the habeas petition. *See* ROA.35-55. The documentary evidence in the record also supports the District Court's finding that the Conejo Family's due process rights were violated, because it includes their I-94s with admission class "DT"—denoting humanitarian parole—that demonstrate the Government decided to parole them into the United States. ROA.30, 35-36; 8 U.S.C. § 1182(d)(5)(A); *Benavente*, 820 F. Supp. 3d at 666 & n.1 (noting "DT" I-94 admission class for noncitizen paroled into the United States). This necessarily means that the Government determined that they were not a flight risk or a danger, heightening their due process rights against summary re-detention. *See* 8 C.F.R. § 212.5(b) (providing for parole only if the noncitizens "present neither a security risk nor a risk of absconding"); *see* ROA.21-25; *Campo-Caberra v. Noem*, No. 5:26-CV-0846-JKP,

2026 WL 911415, at *5 (W.D. Tex. Mar. 20, 2026) (observing that parole "may create a cognizable liberty interest protected by the Fifth Amendment.").

The documentary evidence in the record further undermines the Government's contention that the case was supposedly decided on "*zero* evidence." Gov. Br. 23. There was even a documentary exhibit attached to the Government's own response filing in the district court proceedings, belying its claim that the District Court entered judgment on an "empty factual record." *Id.*; ROA.99-100. The Government goes so far as to cite the Conejo Family's documentary exhibits in its opening brief, further highlighting the inaccuracy of its position. Gov. Br. 11-12 (citing ROA.35-36 and ROA.37-44).

The Government had the opportunity—which it did not take—to sufficiently raise before the District Court the purported inadequacies in the record that it now complains of on appeal. The account it attempts to present now is incomplete and inaccurate. It depends repeatedly and extensively on extra-record evidence that falls outside the record on appeal. Gov. Br. 1-2, 5-6, 12-13, 18, 23-25, 27, 36-38; Dkts. 64, 76. This Court should not permit the Government to avoid the consequences of its actions nor credit the Government's account as a reason to reverse.

## III. Alternatively, this Court can affirm because the record establishes that the Conejo Family's rights under the Fourth Amendment and related grounds were violated by their wrongful arrest and ongoing seizure.

As previously discussed, it is unclear whether the District Court's discussion of administrative warrants as a violation of the Fourth Amendment constituted a formal alternative holding. What *is* clear is that the District Court did not consider or issue any holding based on the Conejo Family's claim that they were entitled to release due to having been arrested without a warrant and without probable cause.

Although the District Court did not address this claim, this Court "may affirm on any ground supported by the record, including one not reached by the district court." *Hammervold*, 3 F.4th at 813 (citation omitted). The record in this case demonstrates five-year-old L.C.R. and his father were arrested without a warrant and without probable cause, and detained for more than 48 hours without a magistrate or sufficiently detached and neutral executive official making an independent determination of probable cause for continued confinement. Their detention was thus unlawful, both at and following the time of arrest, and the habeas remedy of release on that basis would have been supported by the record.

### A. The Government's arrest and detention of Mr. Conejo and L.C.R without a warrant and without probable cause also supports habeas relief.

The Fourth Amendment protects people from "unreasonable searches and seizures" of their person by the government. U.S. Const. amend. IV. Immigration officers' authority to arrest is circumscribed by constitutional, statutory, and regulatory limits. *See id.*; 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c). "The Fourth

Amendment requires that immigration stops must be based on reasonable suspicion of illegal presence, stops must be brief, arrests must be based on probable cause, and officers must not employ excessive force. Moreover, the officers must not make interior immigration stops or arrests based on race or ethnicity." *Trump v. Illinois*, 607 U.S. ----, 146 S. Ct. 432, 436 n.4 (2025) (Kavanaugh, J., concurring in the judgment).

To make a warrantless arrest for immigration purposes, the arresting officer must have "reason to believe" *both* that the noncitizen he is arresting 1) "is in the United States in violation of any [immigration] law or regulation and" 2) that the noncitizen "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii); *Arizona v. United States*, 567 U.S. 387, 408 (2012). Consistent with the requirements of the Fourth Amendment, courts have interpreted "reason to believe" as equivalent to probable cause. *E.g.*, *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1216 (D. Colo. 2025); *see also Morales v. Chadbourne*, 793 F.3d 208, 216 (1st Cir. 2015) (collecting cases). In other words, an immigration officer must have *both* probable cause that the noncitizen is in the United States in violation of the immigration laws *and* probable cause that the noncitizen is likely to escape before they can get a warrant in order to conduct a warrantless arrest. *See id.*

For its part, the Government depends almost exclusively on extra-record evidence to argue that its warrantless arrest of Mr. Conejo and L.C.R. was lawful. Gov. Br. 26-27.[8] In doing so, it attempts to present a radically different narrative of the arrest that is unsupported by any evidence in the record on appeal. *Id.* What the evidence in the record *does* show is that the Government lacked probable cause that Mr. Conejo and L.C.R. were in the United States in violation of the immigration laws, and that the Government lacked probable cause that this father and son were likely to escape prior to the officers being able to secure a warrant. *See* ROA.11-13.

Regarding the immigration laws, officers represented that they were looking for a woman, not Mr. Conejo nor his son. ROA.12. At the point they saw that Mr. Conejo was not the person they were looking for, they still arrested him by grabbing him and placing him in their vehicle. *Id.* The Government hedges on timeline by saying that "Petitioners have *since* conceded they are here unlawfully,"[9] Gov. Br. 27

[8] The other portion of the Government's warrantless arrest argument relies on counter-factual and anachronistic representations that this father and son were subject to final removal orders at the time of their arrest and detention. *See* Gov. Br. 28. The Government's own account contradicts this inaccuracy. *See* Gov. Br. 15-16 (asserting that an IJ ordered them removed on February 19, 2026, weeks after their habeas was granted on January 31, 2026). The Conejo Family's asylum application was pending at the time they were arrested, detained, and litigating their habeas petition in January 2026. ROA.9, 11.

[9] Petitioners have not conceded this, nor have they conceded, as the Government erroneously claims, that they "have final orders of removal." Gov. Br. 27-28. The Conejo Family has a pending PFR and motion for stay of removal in the Second Circuit. *Conejo Arias v. Blanche*, No. 26-1913, Dkts. 1, 23 (2d Cir.).

(emphasis added), but the record does not show the officers had probable cause that Mr. Conejo or his son were here unlawfully at the time of arrest. ROA.11-13.

Additionally, the record shows that Mr. Conejo "did not run away or resist" when the ICE officers approached him. ROA.12. The officers did not have probable cause that this father, who was staying next to the car where his pre-kindergartener child was seated, would be likely to escape before the officers could get a warrant. *Id.* And they also did not have probable cause that five-year-old L.C.R. would be likely to escape from in front of his house before they could get a warrant. *Id.*

None of these facts were disputed by the Government below, and nothing in the record suggests that the Government met either of the requirements of 8 U.S.C. § 1357(a)(2) to arrest the Conejo Family. Lacking probable cause, the warrantless arrests of Mr. Conejo and his son thus violated § 1357(a)(2) and the Fourth Amendment; their detention was unlawful from its inception; and release on habeas would have been proper on these facts. *See, e.g.*, *Rosado v. Figueroa*, No. 25-cv-02157, 2025 WL 2337099, at *18 (D. Ariz. Aug. 11, 2025) (recommending immediate release because petitioner's "detention violates her constitutional rights because her arrest was in violation of her Fourth Amendment rights"), *R.&R. adopted sub nom. Rocha Rosado v. Figueroa*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 422-23, 426 (S.D.N.Y. 2025) (finding a violation of the Fourth Amendment where the government lacked

justification for arrest); *A.B.D. v. Wamsley*, No. 25-cv-02014, 2026 WL 178306, at *11-13 (D. Or. Jan. 22, 2026) (finding warrantless arrests violated, *inter alia*, § 1357(a)(2)); *see also Gamez Lira v. Noem*, No. 25-cv-00855, 2025 WL 2581710, at *3-4 (D.N.M. Sep. 5, 2025) (finding petitioner substantially likely to prevail on Fourth Amendment warrantless arrest claim); *Urquilla-Ramos v. Trump*, 821 F. Supp. 3d 603, 615-30, 632 (S.D.W. Va. 2026) (finding petitioner's Fourth Amendment rights were violated when he was arrested by a group of masked agents and ordering release).

### B. The Government failure to conduct a *Gerstein*-style probable cause determination to continue the Conejo Family's detention likewise warrants habeas relief.

The Government also provided no evidence to show that there was any judicial determination of probable cause to justify the ongoing detention of the Conejo Family, much less within 48 hours, as required by *Gerstein v. Pugh*. *See* 420 U.S. 103, 126 (1975); *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991); ROA.14 (following detention in Whipple Federal Building in Minneapolis, "Respondents did not ask for any information other than their names and dates of birth and reviewed no documentation"). This constituted an additional Fourth Amendment violation warranting habeas relief.

This is because the Fourth Amendment requires "a fair and reliable determination of probable cause as a condition for any significant pretrial restraint

of liberty." *Baker v. McCollan*, 443 U.S. 137, 142-43 (1979). In *Gerstein* and *Riverside*, the Supreme Court delineated what compliance with this constitutional requirement looks like as a practical matter. In *Gerstein*, the Court held that "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention." 420 U.S. at 126. The Court emphasized the requirement "that the existence of probable cause be decided by a neutral and detached magistrate whenever possible" and explained that "a prosecutor's responsibility to law enforcement is inconsistent with the constitutional role of a neutral and detached magistrate." *Id.* at 112-14, 117. In *Riverside*, the Court further clarified that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." 500 U.S. at 56.

There is no evidence in the record that there was any judicial determination of probable cause to support the ongoing detention of the Conejo Family within their first 48 hours in ICE custody (or, indeed, at all). *Cf.* ROA.14. Their detention—which exceeded ten days—therefore violated their Fourth Amendment rights. ROA.11, 14, 108. "Absent obtaining a warrant, the government was required to secure a prompt judicial probable cause determination to justify [Petitioners'] continued detention." *Gamez Lira*, 2025 WL 2581710, at *4. Because the

Government failed to secure a prompt judicial probable cause determination, the Conejo Family's continued detention was unlawful. *Id.*

Further, even assuming *arguendo* that a judicial probable cause determination was not constitutionally required here, the Government's failure to have even a neutral and detached executive official make a probable cause determination within the first 48 hours of detention violated the Conejo Family's rights. The Fourth Amendment principles articulated in *Gerstein* also apply in the civil immigration context, even if the neutral arbiter who determines probable cause may be different. *See Gonzalez v. ICE*, 975 F.3d 788, 824-25 (9th Cir. 2020). The Ninth Circuit has held, for example, the required probable cause determination may be made by a "sufficiently detached and neutral executive official, such as an immigration judge." *Id.* at 824-26.

These important Fourth Amendment principles are also reflected in the immigration statutes and regulations. For example, when an immigration officer conducts a warrantless arrest for civil immigration purposes, 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.3 articulate additional requirements to determine whether further detention is lawful. Section 1357(a)(2) mandates that a noncitizen arrested without a warrant "shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine [noncitizens] as to their right to enter or remain in the United States[.]" 8 U.S.C. § 1357(a)(2).

In turn, 8 C.F.R. § 287.3 supplies a framework for this examination and its impact on custody. First, § 287.3(a) provides that a noncitizen "arrested without a warrant of arrest under the authority contained in [8 U.S.C. § 1357(a)(2)] will be examined by an officer other than the arresting officer." 8 C.F.R. § 287.3(a). This examining officer shall then determine whether there is prima facie evidence that the noncitizen arrested is "present in the United States in violation of the immigration laws" and if so, either refer the noncitizen to an IJ or take other appropriate action. 8 C.F.R. § 287.3(b)-(c). For detention, § 287.3(d) explicitly provides that, barring an emergency, "a determination will be made within 48 hours of the arrest" regarding "whether the [noncitizen] will be continued in custody or released on bond or recognizance." 8 C.F.R. § 287.3(d).

The record does not reflect that the Government followed any of these procedures with the Conejo Family. As a result, and as courts have found, the Government's failure to have a neutral, non-arresting official determine probable cause to continue immigration detention within 48 hours would independently have mandated the Conejo Family's release. *See, e.g.*, *Makuiza v. Wesling*, 826 F. Supp. 3d 176, 182-83 (D. Me. 2026); *Gonzalez*, 975 F.3d at 824-26; *cf. Salazar v. Dedos*, 830 F. Supp. 3d 1110, 1118 (D.N.M. Feb. 27, 2026) (holding a judicial probable cause determination is required). Even a case the Government cites reinforces this principle: the Fifth Circuit noted with approval that "[t]he record indicates full

compliance with the[] procedures" set forth in the prior version of 8 C.F.R. § 287.3. *Salgado v. Scannel*, 561 F.2d 1211, 1212 & n.2 (5th Cir. 1977) (per curiam) ("[A] decision will be made within 24 hours or less as to whether he will be continued in custody or released on bond or recognizance."); Gov. Br. 26-27.

### C. Ordering release as a habeas remedy for these Fourth Amendment violations would not be equivalent to suppressing the Conejo Family's identities or challenging subsequent immigration proceedings.

Finally, the Government is wrong to insist that release as a remedy for these Fourth Amendment violations would be improper, and its reliance on *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039-40 (1984), is misplaced. Gov. Br. 27-28.

As an initial matter, *Lopez-Mendoza* involved an immigration petition for review, not a habeas petition. 468 U.S. at 1034-36. Further, *Lopez-Mendoza* concerned whether the unlawful arrest of the petitioner rendered statements made *during* his unlawful detention inadmissible and whether he could be subject to a deportation hearing. *Id.* at 1035-36, 1039-40. The Government erroneously conflates the prudential remedy of suppression of evidence at issue in *Lopez-Mendoza* with the habeas remedy of release, which it characterizes as "suppress[ing] the body of a habeas petitioner." Gov. Br. 27-28; *Lopez-Mendoza*, 468 U.S. at 1039.

Rather than suppressing the "'body' or identity" of the petitioner as the Government asserts, Gov. Br. 27, a habeas action challenges unlawful detention, i.e., governmental custody. *See* 28 U.S.C. § 2241. "The typical remedy for such detention

is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). That is no less true for a habeas petition brought on Fourth Amendment or related grounds than one brought on any other ground that makes detention unlawful. *See, e.g.*, *A.B.D.*, 2026 WL 178306, at *11-13 (granting release after finding that habeas petitioners were subjected to "unlawful warrantless arrests that violated the INA, the APA, and Petitioners' Fourth Amendment rights"). Mr. Conejo and L.C.R. were not challenging their removal proceedings or trying to suppress anything in their immigration case by filing a habeas petition. They instead challenged their continued *detention* (i.e. seizure) on multiple grounds, including based on the Fourth Amendment violations and related violations of their rights. ROA.25-26. Release was therefore an appropriate remedy. *See Munaf*, 553 U.S. at 693; *accord Urquilla-Ramos*, 821 F.Supp.3d. at 631-32.

## IV. The Government's statutory analysis is unpersuasive because the District Court decided this case on *constitutional*, not statutory, grounds.

The Government's argument that *Buenrostro* governs this case misunderstands the District Court's decision and the relevant immigration posture. The Government contends Mr. Conejo and L.C.R. cannot challenge their detention because this Court previously held that § 1225(b)(2) authorizes detention of applicants for admission. Gov. Br. 18, 28. It is true that this Court found individuals who entered the country without inspection were not entitled to a bond hearing as a

*statutory* matter under § 1225(b)(2). *Buenrostro*, 166 F.4th at 498. *Buenrostro*, however, did not consider or address whether those same individuals might be entitled to a bond hearing by the *Federal Constitution. See generally id.*

The Government contends that "Petitioners requested relief largely based on statutory arguments" and that this Court has since rejected those arguments, but both points are inaccurate. *See* Gov. Br. 3-4, 28-29. The Conejo Family's leading argument in their petition for habeas relief to the District Court was that their detention violated constitutional due process—which, likewise, was the primary reason cited by the District Court in its order and judgment granting the petition for their release. ROA.16, 21-25, 101-03. In *Buenrostro*, this Court did not address whether constitutional due process requires bond hearings. *See generally* 166 F.4th 494. As such, *Buenrostro* did not foreclose the Conejo Family's constitutional due process claims nor retroactively invalidate the District Court's constitutional due process decision.

Second, even if the District Court had decided this case on statutory grounds, *Buenrostro* would still have no effect. That is because this case is factually distinguishable from *Buenrostro* in a critical way. In *Buenrostro*, this Court held that as a statutory matter, the detention of immigrants who entered the country without inspection is governed by 8 U.S.C. § 1225, rather than 8 U.S.C. § 1226, concluding those individuals are not eligible for a bond hearing under the statutory framework.

*Id.* That case, however, concerned the right to a bond hearing for individuals who entered *without inspection*. *See id. at* 498-500.

Mr. Conejo and L.C.R. did not enter the country without inspection—rather, they presented at the border using the CBP One application and were paroled into the country after the government determined they posed neither a danger to the community nor a flight risk. ROA.11, 22-24. The posture of individuals like Mr. Conejo and his pre-kindergarten child was not before this Court when it decided *Buenrostro,* so that decision does not inform this case. *See Buenrostro,* 166 F.4th at 498. The Government agrees, having conceded both to the District Court and in this appeal that this case involves a family that entered lawfully, with the Government's permission, and is factually distinguishable from *Buenrostro.* ROA.89; Gov. Br. 11-12.

For the same reason, the resolution of this case does not turn on this Court's resolution of *Sosnava*, which is currently awaiting the decision of this *en banc* Court following oral argument. *Sosnava Rodriguez v. Ortega*, No. 26-50183, Dkt. 296 (5th Cir. Sep. 24, 2026) (*en banc* oral argument heard). This Court's pending decision in *Sosnava* concerns whether individuals who entered the country without inspection, and therefore have no statutory right to a bond hearing under *Buenrostro*, nonetheless have a *constitutional* right to a bond hearing. *See generally* No. 26-50183; *see also Sosnava Rodriguez v. Ortega*, 180 F.4th 702, 709 (5th Cir. 2026),

*vacated pending reh'g en banc*, 181 F.4th 608 (5th Cir. 2026). While *Sosnava* concerns constitutional due process, the petitioners in that case are likewise in a fundamentally distinct situation: the *Sosnava* petitioners entered without inspection, while Mr. Conejo and his five-year-old entered lawfully and were granted parole. *See Sosnava*, 180 F.4th at 709; *cf.* ROA.11, 22-24.

Moreover, unlike in *Sosnava*, in this case the Government *already* made a decision that the family is not a flight risk or danger to grant them parole. ROA.11; *see also* 8 C.F.R. § 212.5(b). Thus, the Conejo family has a heightened interest in procedures to preserve their liberty. *See Morrissey v. Brewer*, 408 U.S. 471, 484 (1972) (due process requires additional procedures when revoking liberty of a parolee); *Lopez-Arevelo*, 801 F. Supp. 3d at 685-86 (same when re-detaining immigration parolee). Specifically, there is an additional public interest in the Conejo Family participating as productive members of society when it has already been decided they are releasable. *See Morrissey*, 408 U.S. at 484. Moreover, the family has an interest in being at liberty and being treated fairly, as opposed to being arbitrarily re-detained when they are not a flight risk or danger. *See id.*; *accord Campo-Caberra*, 2026 WL 911415, at *5 (noting that when a noncitizen is paroled and released into the United States, "the release may create a cognizable liberty interest protected by the Fifth Amendment.").

## V. If the Court does not affirm on the basis of the District Court's due process holding or on the basis that the Conejo Family's detention violated the Fourth Amendment or related grounds, it should remand.

If this Court determines that the District Court did not decide this case on due process grounds, and declines to exercise its jurisdiction to affirm the District Court's judgment on the basis that the Conejo Family's detention violated the Fourth Amendment or related grounds, then it should remand to the District Court to consider these claims in the first instance. It is well-established that this Court "will not reach the merits of an issue not considered by the district court." *Baker v. Bell*, 630 F.2d 1046, 1055 (5th Cir. 1980). And in this case, "letting the district court address this issue in the first instance is consistent with [this] court's longstanding practice with regards to habeas claims." *Sorto v. Guerrero*, No. 22-70013, 2025 WL 1527760, at *2 (5th Cir. May 29, 2025) (*citing Webb v. Thaler*, 384 F. App'x 349, 350 (5th Cir. 2010)).

## VI. If this Court does remand, the extraordinary remedy of reassignment is unwarranted.

In the event this Court does remand, there is no reason to grant the Government's request that it reassign this case to another district judge. Gov. Br. 30-38. "[R]eassignment is an extraordinary power that is rarely invoked." *United States v. Khan*, 997 F.3d 242, 248 (5th Cir. 2021) (internal quotations omitted). There are two "related" tests this Court applies when considering reassignment. *Id.* at 248-49. The first is a three-factor test analyzing:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected,
> (2) whether reassignment is advisable to preserve the appearance of justice, and
> (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*Id.* at 249 (internal quotations omitted). The second test, which "aligns with" the second factor above, asks the Court whether "the facts might reasonably cause an objective observer to question the judge's impartiality." *Id.* (internal brackets omitted).

None of these factors weigh in favor of reassignment here, because the Government's complaints all amount to grievances with the District Court's order and judgment. But "judicial rulings alone almost never constitute a valid basis" for a finding of bias. *Cf. Liteky v. United States*, 510 U.S. 540, 555 (1994) (addressing recusal statute). And here, because the "entirety" of the Government's "claim for reassignment centers on the district court's rulings against [it]," it cannot clear the "high hurdle" to justify reassignment. *Stanford*, 883 F.3d at 516; *accord Sec. & Exch. Comm'n v. Barton*, 135 F. 4th 206, 229 (5th Cir. 2025) ("[A party] can't complain that the district court seemed biased merely because it ruled against him. If such a ruling was a basis for showing judicial bias, *every* losing party would make the same argument (but they don't).").

Specifically, the only record evidence the Government points to as demonstrating so-called bias is that the District Court: (1) ordered expedited briefing and issued a shorter order with fewer citations, and rendered judgment more quickly than the Government preferred; (2) supposedly failed to address the issues that the parties raised; (3) stayed the Conejo Family's removal pending the litigation; (4) ruled on the basis of the purportedly unverified facts in the Conejo Family's petition; and (5) "[i]nsofar" as it granted the Conejo Family's emergency motions, did not address the factors for an injunction. Gov. Br. 32-33. None of these complaints clears the "high hurdle" to justify reassignment.

*First*, although short, the District Court's order clearly grounded its determination that the Conejo Family's detention was unconstitutional on the basis of due process. *See* ROA.101, 103; *see also supra*, Section I.A. Moreover, the District Court's order timeline provided *more* time than the statutorily-contemplated timeline in 28 U.S.C. § 2243. ROA.7, 83-84, 86. And the Government never protested the court's timeline, never requested additional time nor sought a continuance, and instead timely filed a response. *See generally* ROA.88-100. If the Government had asked for an extension and presented a sound reason for one that outweighed the need for expediency in the ongoing detention of a five-year-old boy and his father, perhaps the District Court would have granted it. But there is no way for this Court to know, because the Government never asked the District Court for

additional time. Under such circumstances, that the District Court proceeded on the statutory timeline, which the Government never contested, does not show bias.

*Second*, as already discussed, the District Court *did* address an issue the parties raised, issuing a judgment grounded in due process, which was the Conejo Family's primary claim below and was briefed extensively by both parties. *See* ROA.7-8, 16, 21-25, 70-74, 88, 92-93, 101, 103; *see also supra*, Section I.A. The Government identifies no rule requiring a District Court to rule on every issue raised by the parties when full relief can be granted on one, or how not ruling on every such issue constitutes bias. And although the District Court's statements regarding administrative warrants and the Fourth Amendment may have displayed some frustration with the Government, "expressions of impatience, dissatisfaction, annoyance, and even anger are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *United States v. Burger*, 170 F.4th 395, 410 (5th Cir. 2026) (citing *Liteky*, 510 U.S. at 555-56) (internal quotations omitted). Those expressions of frustration "do not establish 'bias or partiality.'" *Id.* In *Sec. & Exch. Comm'n*, for instance, this Court held that the "high bar" for reassignment was not met because the district judge "dutifully implemented" the appellate court's instructions on remand. 135 F.4th at 229. In so holding, the Court noted that the judge's comments about the defendant's "defrauded

investors" and the defendant's proclivity to "dissipate, conceal, or transfer assets" during the proceedings did not warrant reassignment. *Id.*

*Third*, the District Court's stay of the Conejo Family's removal pending the litigation, to maintain jurisdiction, was entirely routine. *See, e.g.*, *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2606118, at *1 (W.D. Tex. Sep. 9, 2025) ("A federal court can always determine its own jurisdiction and may order a respondent to preserve the status quo to[ ]enable it to do so."); *see also United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947) ("[T]he District Court had the power to preserve existing conditions while it was determining its own authority to grant injunctive relief.") This Court's decision in *Imran v. Harper* did not undermine the propriety of this ordinary practice. *See* Gov. Br. 32 (citing No. 25-30370, 2026 WL 93131, at *1 (5th Cir. Jan. 13, 2026)). Rather, *Imran*'s statement that a "request for [a] stay of removal is a challenge to a removal order" and therefore barred by 8 U.S.C. § 1252(g), *see* 2026 WL 93131, at *1, has no bearing here; neither Mr. Conejo nor L.C.R. were subject to a removal order when the case was being litigated below. ROA.11. The Government makes no argument whatsoever to suggest how the District Court's stay could possibly exhibit bias.

*Fourth*, the facts in the Conejo Family's petition *were* properly verified, and even had they not been, the District Court would have been well within its rights to consider the facts therein, as district courts routinely and properly do. *See supra*,

Section II.B-C. The District Court therefore did not grant the habeas on an "empty factual record," as the Government suggests. Gov. Br. 23.

*Fifth*, the Government's complaint that the District Court's failure to address the injunction factors somehow demonstrates bias rests on a factual inaccuracy. The District Court had no need to address the injunction factors because it grounded its judgment in its grant of the Conejo Family's petition and dismissed as moot their motion for PI and TRO relief. ROA.104-05.

Nothing in any of these facts suggests "bias," and the Government's insistence that they do, simply because the District Court's decisions "all favored [the Conejo Family]," Gov. Br. 33, fails to account for the obvious: that the Conejo Family had meritorious claims.

Beyond that, the Government can point to nothing to justify the "rare and disfavored order" of reassignment on remand. *United States v. Bowen*, 799 F.3d 336, 359 (5th Cir. 2015).[10]

---

[10] Extraordinary circumstances warranting reassignment include when a district court has made *ad hominem* attacks on counsel, including discriminatory comments, *see United States v. Swenson*, 894 F.3d 677, 681-86 (5th Cir. 2018), when a district judge has failed to resolve issues with his decision on remand, demonstrating he is "immovable from his views," *see Khan*, 997 F.3d at 244, when a district court fails to heed instructions by the appellate court after *multiple* remands, *see M.D. by Stukenberg v. Abbott*, 119 F.4th 373, 386-87, 394 (5th Cir. 2024), or after remand, if there *continues* to be "tension between [the appellate court] and the district court opinions," *see Johnson v. Sawyer*, 120 F.3d 1307, 1333 (5th Cir. 1997). The circumstances here do not remotely resemble the facts of these cases.

Finally, should the Government attempt in its reply brief to reassert its twice-failed motion to supplement the record on appeal with an email sent following final judgment, this Court should—for the third time—deny that motion. *See* Dkts. 64, 76. But even if the email is accepted as part of the record on appeal, it does not demonstrate bias justifying reassignment.

## CONCLUSION

The Court should hold that the Government has waived or forfeited its challenge on appeal to the District Court's grant of the Conejo Family's petition for writ of habeas corpus based on constitutional due process, and affirm on that basis. In the alternative, the Court may affirm the judgment based on establishment in the record that the Conejo Family's initial and/or continued detention was unlawful under the Fourth Amendment or related laws and regulations. Should the Court choose not to affirm on either of those bases, it should instead remand to the District Court for further proceedings.

Dated: September 29, 2026

Respectfully submitted,

/S/ *S. Denni Arnold*
S. Denni Arnold
Texas Bar No. 24135562
Texas Civil Rights Project
P.O. Box 17757
Austin, TX 78760
(956) 290-9877
denni@texascivilrightsproject.org

Daniel Hatoum
Texas Bar No. 24099136
Texas Civil Rights Project
P.O. Box 219
Alamo, Texas 78516
(956) 787-6348
daniel@texascivilrightsproject.org

Kate Gibson Kumar
Texas Bar No. 24137588
Texas Civil Rights Project
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 ext. 225
(512) 474-0726 (fax)
kate@texascivilrightsproject.org

Zachary Dolling
Texas Bar No. 24105809
Texas Civil Rights Project
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 ext. 225
(512) 474-0726 (fax)
zachary@texascivilrightsproject.org

Jonathan D. Hacker
Washington, D.C. Bar No. 456553
O'Melveny & Myers, L.L.P.
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300
(202) 383-5414 (fax)
jhacker@omm.com

Melissa C. Cassel-Walker
California Bar No. 324680
O'Melveny & Myers, L.L.P.
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
(415) 984-8839
mcassel@omm.com

Kelsey Miller
New York Bar No. 5932637
O'Melveny & Myers, L.L.P.
18th Floor
400 S. Hope Street
Los Angeles, CA 90071
(213) 430-6298
kelseymiller@omm.com

*Counsel for Petitioners-Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2026, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system, which sends notice of electronic filing to all counsel of record.

/S/ *S. Denni Arnold*
S. Denni Arnold
*Counsel for Petitioners-Appellees*

Dated: September 29, 2026

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), and 5th Cir. R. 32.1, this document contains 13,000 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word in Microsoft Office Standard 2019 in Times New Roman 14-point font.

/S/ *S. Denni Arnold*
S. Denni Arnold
*Counsel for Petitioners-Appellees*

Dated: September 29, 2026